831 P.2d 414

**The STATE of Arizona, Appellee,**

v.

**Robert Lee ARCHIE, Jr., aka "A.J." Archie, Appellant.**

**No. 2 CA–CR 91–0090.**

Court of Appeals of Arizona, Division 2, Department A.

March 12, 1992.

Review Denied June 30, 1992.*

Grant Woods, Atty. Gen. by Paul J. McMurdie and Daniel J. Kiley, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Mary Brigid Dwyer, Tucson, for appellant.

## OPINION

LACAGNINA, Presiding Judge.

In this appeal from a conviction for kidnapping and sexual assault, we must decide whether the prosecutor's avowals concerning attempts to locate the victim and assure her presence at trial constituted the good-faith effort required for a finding of unavailability and subsequent admission of her former testimony. We hold that they do not, and reverse the convictions and sentences imposed.

## FACTS AND PROCEDURAL HISTORY

Robert L. Archie, Jr. was indicted on one count of kidnapping, and two counts each of sexual assault and sexual abuse. The state alleged prior convictions and that the felonies were of a dangerous nature. Archie and the victim lived in the same apartment complex and knew each other. The victim claimed Archie assaulted her in her apartment, threatening her with a knife. His defense was consent.

At Archie's first trial, the trial court declared a mistrial because of a deadlocked jury. Prior to the second trial, the victim moved to Indiana. The state filed a motion to use the victim's former testimony in the second trial, *citing* Ariz.R.Evid. 804(b)(1), 17A A.R.S. At a hearing on that motion the prosecutor avowed, without affidavits or unsatisfied returns of service, that the

---

* Corcoran, J., of the Supreme Court, voted to grant review.

state was unable to locate her in Indiana, although the state claimed the receipt from a certified letter sent to her in Indiana had been returned. The state also claimed that because the victim was still under subpoena for a previous trial date, it was not required to employ an out-of-state subpoena server. The trial court denied the state's motion, finding there was "a good likelihood that the State would be able to secure the attendance of [the victim] at the trial by using the out-of-state subpoena statute if this trial were continued." In addition, the trial court stated its belief "that it is in the interests of justice in this case to have the victim testify in person if at all possible." Two days later, the trial court granted the state's motion to continue the trial date, based upon its inability to locate the victim.

Two weeks later, the state filed a request for attendance of an out-of-state witness pursuant to A.R.S. §§ 13–4091 to 4096, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (the Uniform Act). The state alleged in its certificate that the victim's presence was required at trial. The trial court signed the certificate, which was to be presented to a "Judge of a Court of Record of the County of Lawrence, State of Indiana, where [the victim] now is, upon proceedings to compel said [victim] to attend and testify at the trial of this cause before this Court in the State of Arizona" on the date set for trial, which was less than three weeks away.

One day before Archie's second trial was scheduled to begin, the trial court heard arguments from both the state and Archie concerning the use of the former testimony. The prosecutor avowed, without any documentary support, that the victim had been served, had been provided with a plane ticket and witness fee, had not taken the scheduled flight and had not contacted the state with any excuse for her absence, and it appeared that she did not "wish in any way shape or form [to] participate for a second time in this." Archie argued that the Uniform Act allowed the witness to be taken into custody, if necessary, in order to secure her presence at trial, and that the

state had previously used the Uniform Act to have people arrested who "exhibited the very same conduct that [the victim] has." The trial court ruled "it is contrary to the Court's belief that the State was required to actually take [the victim] into physical custody and hold her in custody."

The trial court allowed the testimony to be used, stating as follows:

THE COURT FINDS that the witness is unavailable within the meaning of the Rule, that the State has made a good-faith effort to obtain her presence at the trial, and that her former testimony is admissible under Arizona case law and in this case the circumstances do not violate the confrontation clause of the Arizona or Federal Constitution. . . ."

In response to Archie's argument that the state should have to "prove through paperwork whether or not they advised the witness that they would be taking her into custody," as defense counsel had done to secure a witness's presence at the second trial, the court ordered the state to file the return of service when the state received it.

During the trial, Archie filed a supplemental Rule 15 disclosure, indicating that the prosecutor would be called "to testify as to the refusal of the prosecutrix to cooperate with the Court and her refusal to appear at trial." During trial, the court denied Archie's motion to disclose the victim's lack of cooperation to the jury. On the eve of trial, Archie also moved to have the trial court order the state to supplement the record, to "produce all pleadings" to support the state's avowal that it had used the procedure required in §§ 13–4091 and 4093. In response, the court again ordered the state to file the return of service. There is no return of service in the record.

The victim's former testimony was read to the jury, and a copy of the transcript was given to the jury during its deliberations. Archie was convicted on all counts, and sentenced to concurrent, mitigated terms. He appeals from the convictions and sentences imposed.

## UNAVAILABILITY

 Before the former testimony of a witness may be admitted against an accused, the confrontation clause of the United States and Arizona Constitutions first requires a finding that the witness is unavailable.[1] A witness is not unavailable unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. *Barber v. Page*, 390 U.S. 719, 724, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968). The affidavit of a prosecutor is insufficient, *State v. Alexander*, 108 Ariz. 556, 561, 503 P.2d 777, 783 (1972), because the good-faith effort must be proven by "competent evidence, sufficient to convince the court that the witness *in fact* cannot be produced." *Id.* at 562, 503 P.2d at 784 (emphasis in original).

In *Alexander* the court stated that competent evidence includes, at a minimum, a subpoena issued and returned unsatisfied, and preferably, "the sworn testimony of the authorities charged with the duty of serving the subpoena and of the people having knowledge of the missing witness's ... unavailability to appear in person." *Id.* at 561, 503 P.2d at 783. A simple statement by the prosecutor that the witness has not appeared for trial, like the affidavit of the prosecutor in *Alexander*, "provides no facts from which the trial court may exercise its discretion to determine whether a good-faith effort ha[s] been made" to secure the witness's presence at trial. *State v. Edwards*, 136 Ariz. 177, 183, 665 P.2d 59, 65 (1983). In *Edwards*, the supreme court held that a good-faith effort includes the state's use of the Uniform Act, "unless to do so would be futile," *Id.* at 182, 665 P.2d at 64, *citing State v. Ray*, 123 Ariz. 171, 173, 598 P.2d 990, 992 (1979) and *State v. Alexander, supra*.

Section 13–4093 of the Uniform Act provides for the summoning of a witness from another state to testify at a criminal proceeding in Arizona. In the certificate signed under the seal of the court, a judge states that a named person is a material witness in a pending criminal proceeding and that his or her presence is necessary, specifying the number of days the witness will be required. The court in the county where the witness is found may then summon the witness to attend and testify in the criminal proceeding in Arizona.

Section 4093(B) allows the judge signing the certificate to recommend that "the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state." If that occurs and the judge in the county where the witness is found satisfies himself "of the desirability of such custody," he may order that the witness be "taken into custody and delivered to an officer of this state, which order shall be sufficient authority to the officer to take the witness into custody and hold him unless and until he may be released by bail, recognizance or order of the judge issuing the certificate."

 In this case, there is no competent evidence in the record of any action taken by the Indiana authorities pursuant to the signed certificate. Although the prosecutor followed the initial procedures under the Uniform Act, there is no evidence of what ensued. Presented with nothing more than the prosecutor's avowal that the victim had been served but did not wish to appear, the trial court lacked any evidence from which to conclude that the victim, *in fact*, could not be produced. *State v. Alexander, supra*.[2]

---

1. We acknowledge that the United States Supreme Court has not imposed the "unavailability rule" as a predicate for introducing certain hearsay statements. *See White v. Illinois*, — U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992); *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). However, in both cases the Supreme Court makes clear that the rule, developed in cases involving former testimony, still applies to the introduction of those statements. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

2. The state argues that reversal is not required if the only evidence necessary to show a good-faith effort is the return of service. While we need not decide that question in this appeal, it is not clear that that would suffice. The Uniform Act does not provide for the issuance of a subpoena, but sets forth a process for obtaining a court order for the production of a witness, who may then appear in the jurisdiction where he is found and convince the court to deny or quash the subpoena. *Chesser v. State*, 168 Ga.App. 195, 308 S.E.2d 589 (1983). Therefore, more

In addition, the certificate which the prosecutor submitted to the court and which the court signed did not recommend that the victim be taken into custody. In light of the trial court's ruling that it did not believe it was necessary for the prosecutor to ask that the victim be taken into custody, it would have been futile for Archie to argue for such a recommendation, although he did so following the victim's failure to appear for the impending trial. Clearly, if the state had submitted a certificate containing the recommendation that the victim be taken into custody, it is more likely that she would have, in fact, been produced. This case is distinguishable from *Alexander, Ray,* and *Edwards,* where the state had been unable to even locate the witnesses. Here, the state knew the victim's address, and according to the prosecutor, his legal assistant had spoken to the victim at least twice since she moved to Indiana. The state had even sent her an airplane ticket and her witness fee. Therefore, because the witness had been located, it would not have been futile to recommend that she be taken into custody, as it likely would have resulted in her presence at trial.

## CONCLUSION

We find, in sum, that the good-faith requirement for a finding of unavailability has not been met for two reasons. First, the state produced no evidence of the efforts taken to secure the victim's presence at trial; the prosecutor's conclusion that she did not appear because she did not wish to participate was not enough for the trial court to conclude the state had done everything reasonably necessary to produce the victim for trial. Second, the state could have done more to secure the victim's presence by properly using the Uniform Act and asking the court to recommend that the victim be taken into custody. Because we find the good-faith requirement was not met, the victim was not unavailable and her former testimony was erroneously admitted.

In light of our conclusion that the initial requirement of showing unavailability was not satisfied, we need not discuss the other issues Archie raises. We reverse the convictions and sentences imposed, and remand for proceedings consistent with this opinion.

LIVERMORE, C.J., and HOWARD, J., concur.

may be required to show compliance with the Uniform Act, especially in this case where the state knew where the witness was. In addition, such return of service may not be sufficient where the facts show that taking the victim into custody was the only way to assure her presence at trial.