[No. S158898. Apr. 1, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY IVAN COGSWELL, Defendant and Appellant.

**COUNSEL**

Patricia A. Scott, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Donald E. De Nicola, Deputy State Solicitor General, Gary W. Schons, Assistant Attorney General, Steve Oetting, Rhonda Cartwright-Ladendorf, Kristen Kinnaird Chenelia and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KENNARD, J.**—A witness's preliminary hearing testimony is admissible at trial if the witness is "unavailable" despite the exercise of "reasonable diligence" by the party seeking the witness's attendance. (Evid. Code, § 1291.) At issue is whether, to show "reasonable diligence" in obtaining the presence at trial of a sexual assault victim living outside California, the prosecution in this case had to ask a court to order the victim taken into custody and transported to California to testify at defendant's trial.

On a visit to California, a Colorado woman was sexually attacked. At the preliminary hearing, she testified against defendant Henry Ivan Cogswell, her attacker, but thereafter she refused to return to California to testify at his trial. The prosecution then sought to compel her attendance at trial through a law that has been adopted in all 50 states and is known as the Uniform Act to Secure the Attendance of Witnesses from without the State in Criminal Cases. (Uniform Act; Pen. Code, § 1334 et seq.) Under the Uniform Act, as adopted in California, a party in a criminal case can ask a court in the state where an out-of-state material witness is located to subpoena the witness and also to have the witness taken into custody and brought to the prosecuting state to testify.

At the prosecution's request, a Colorado court issued a subpoena to the sexual assault victim. When she did not appear at defendant's California trial, the California trial court declared her to be unavailable as a witness, and it permitted the prosecution to use the victim's preliminary hearing testimony as evidence at defendant's trial. A jury convicted defendant of various sexual assaults. He appealed.

The Court of Appeal disagreed with the trial court's determination of the Colorado witness's unavailability. In the Court of Appeal's view, the prosecution had not used reasonable diligence in securing her presence at defendant's California trial because it did not avail itself of the Uniform Act's provision allowing for an out-of-state material witness's detention and transportation to the prosecuting state. Unlike the Court of Appeal, we conclude that the prosecution did use reasonable diligence in obtaining the witness's presence.

I

Defendant was accused of sexually assaulting Lorene B., a Colorado resident, while she was vacationing in California. Lorene returned to California to testify at defendant's preliminary hearing, where she was thoroughly cross-examined by defense counsel. Based on that testimony, defendant was held to answer on the charged sexual offenses.

Because Lorene had previously been cooperative, the prosecution had not subpoenaed her to testify at defendant's California trial. On the date of trial, Lorene told the prosecution she would not testify against defendant. Without Lorene's testimony at trial, the prosecution could proceed against defendant only if it could use, as evidence of defendant's guilt, the testimony that Lorene had previously given at the preliminary hearing.

Because the prosecution could not show that it had used reasonable diligence in securing Lorene's attendance at defendant's trial (Evid. Code, § 240, subd. (a)(5)), and because without such a showing it could not use at trial the testimony that Lorene had given at the preliminary hearing, it asked the trial court to dismiss the case. A new complaint against defendant was then filed. The parties stipulated that defendant could be held to answer on the complaint and that the complaint could be deemed the information. The case was set for trial on December 20, 2005.

On November 2, 2005, the prosecution asked the San Diego Superior Court that, in accordance with the Uniform Act, a request be made to the Denver District Court in Colorado for the issuance of a subpoena to Lorene. The court did so. As required under the Uniform Act, the subpoena request was accompanied by a round trip airplane ticket from Denver to San Diego, plus a daily allowance for food and hotel expenses.

In mid-December 2005, the San Diego Superior Court vacated the December 20 trial date, and set a new trial date for January 31, 2006. On December 20, in a telephone call to the prosecution in California, Lorene said she would not testify at defendant's trial. Thereafter, the prosecution made no further efforts to contact Lorene, fearing that she would view this as "intimidation," and that if she were told about the new January 31, 2006, trial date *before* she had been subpoenaed she would try to evade service of the subpoena. Instead, the prosecution again asked the San Diego Superior Court to have the Denver, Colorado, court subpoena Lorene to appear as a material witness at defendant's San Diego trial, rescheduled for January 31, 2006. Again, the request was accompanied by a round trip airplane ticket to San Diego and a daily allowance for food and hotel expenses. The prosecution did not request, as permitted under the Uniform Act, that Lorene be taken into custody and brought to San Diego to testify.

The Denver, Colorado, court issued the subpoena, and the Denver District Attorney then confirmed that the subpoena was served on Lorene on January 20, 2006, and that Lorene was given the requisite plane ticket and witness fees.

When on February 1, 2006, the first day of defendant's trial in San Diego, Lorene did not appear, the prosecution asked the trial court that, because

Lorene was "unavailable as a witness" (Evid. Code, § 1291, subd. (a)) notwithstanding the prosecution's use of reasonable diligence in attempting to secure her presence (*id.*, § 240, subd. (a)(5)), the prosecution be allowed to use as evidence at defendant's trial Lorene's previously given preliminary hearing testimony. The prosecutor explained: "[Lorene] has stated to me and to my investigator . . . that she has had as much of this matter as she can possibly handle. [¶] She's had contact from the family members of the defendant, from her prior friends. Given the small nature of the deaf community,[1] she lives in Colorado to escape what she has lived through here. And she has emotional issues with coming back here to court. She informed me prior to yesterday at the last trial call that she would not be here." Defendant objected, unsuccessfully, that the prosecution had not used reasonable diligence to secure Lorene's attendance as a witness because of its failure to ask a Colorado court to order that, as allowed under the Uniform Act, Lorene be taken into custody and brought to San Diego to testify at defendant's trial.

Based primarily on Lorene's preliminary hearing testimony, the jury convicted defendant as charged. In a bifurcated proceeding, the jury found that defendant had a prior serious felony conviction (Pen. Code, §§ 667, subds. (a), (b)–(i), 668), that he had served a prison term for that conviction and had not remained free from any new offense for 10 years after his release (*id.*, §§ 667.5, subd. (a), 667.6, subd. (a)), and that a previous conviction for forcible rape made him a habitual sex offender (*id.*, § 667.61, subds. (a), (c), (d)). The trial court sentenced defendant to consecutive indeterminate terms of 50 years to life on two counts of rape, and it imposed a consecutive term of five years for his prior serious felony conviction. On the remaining counts, the court imposed concurrent sentences.

On appeal, defendant reiterated the argument he had made in the trial court that to show reasonable diligence in securing Lorene's presence at trial, the prosecution should have invoked the Uniform Act's custody-and-delivery provision. The Attorney General responded that the prosecution could not resort to that provision because Code of Civil Procedure section 1219's subdivision (b) (hereafter section 1219(b)) prohibits the confinement of a sexual assault victim who refuses to testify about the assault. That provision states: "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the victim of a sexual assault . . . for contempt when the contempt consists of refusing to testify concerning that sexual assault . . . ." (*Ibid.*)[2]

---

[1] Both defendant and Lorene are deaf.

[2] As discussed later, the Attorney General no longer argues that this provision barred the prosecutor from asking that Lorene be taken into custody under the provisions of the Uniform Act.

The Court of Appeal reversed defendant's convictions, holding that section 1219(b) "does not . . . limit the power of a California court to utilize the custody and delivery provisions of the Uniform Act." The purpose of section 1219(b), the Court of Appeal stated, is to forbid the confinement of a sexual assault victim based on "a *finding of contempt* arising from a refusal to testify." (Italics added.) But, the court explained, the "custody and delivery provision of the Uniform Act is a device to assure the attendance of a witness at trial and not a punishment for contempt arising from a refusal to testify." Thus, the Court of Appeal held, section 1219(b) "did not forbid the use of the act's custody and delivery provisions to secure Lorene's attendance at trial."

The Court of Appeal further stated that because "the prosecution was on notice that it was highly probable Lorene would not return to California even if ordered by a court to do so," the prosecution did not use "every reasonable means to secure her attendance and, therefore, did not exercise reasonable diligence" in securing Lorene's presence at defendant's California trial. Therefore, the Court of Appeal concluded, the trial court erred in declaring Lorene unavailable as a witness and in allowing the prosecution to use at defendant's trial Lorene's preliminary hearing testimony. This error, the Court of Appeal held, was prejudicial, because without the use of that testimony at defendant's trial there was no evidence of his guilt.

We granted the Attorney General's petition for review.

## II

We here consider the interaction among four statutes: the Uniform Act, which allows a prosecutor or a defendant in a criminal case to request that an out-of-state witness be subpoenaed and be taken into custody and transported to the prosecuting state in which trial is pending; Evidence Code sections 240 and 1292, which permit the use of prior testimony by an unavailable declarant; and Code of Civil Procedure section 1219(b), which prohibits the confinement of a sexual assault victim for contempt based on a refusal to testify about the assault. A brief review of each follows.

### A. *The Uniform Act*

The Uniform Act was initially approved by the National Conference of Commissioners on Uniform State Laws in 1931. The commissioners approved a revised version of the act in 1936, which California adopted in 1937. There are slight differences between the version of the Uniform Act adopted in Colorado (Colo. Rev. Stat. § 16-9-201 et seq.)—the state where sexual assault victim Lorene was living at the time of the trial in this case—and the version adopted in California (Pen. Code, § 1334 et seq.), but none is pertinent here.

■ Under the Uniform Act, as adopted in California, when a person located in a sister state that has also adopted the Uniform Act is a "material witness" in a "prosecution pending in" California, the judge of the court in which the prosecution is pending "may issue a certificate . . . specifying the number of days the witness will be required," which "shall be presented to a judge of a court of record in the county of such other state in which the witness is found." (Pen. Code, § 1334.3, subd. (a); see also Colo. Rev. Stat. § 16-9-203(1).) A witness who travels by airplane is compensated for the flight, and a small allowance is provided to cover the witness's expenses. (Pen. Code, § 1334.3, subd. (a); see also Colo. Rev. Stat. § 16-9-203(2).) The witness is paid statutory witness fees, is reimbursed "for any additional expenses of the witness which the judge . . . shall find reasonable and necessary" (Pen. Code, § 1334.3; the Colo. law does not contain this requirement), and may not be arrested or served with legal documents while present in the state where the witness is testifying (Pen. Code, § 1334.4; see also Colo. Rev. Stat. § 16-9-202(2)).

■ Under the Uniform Act, a sister state court that receives a certificate described in the preceding paragraph must direct the witness named on the certificate to appear at a hearing. (Pen. Code, § 1334.2; see also Colo. Rev. Stat. § 16-9-202(1).) If at that hearing the sister state court "determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify" (Pen. Code, § 1334.2), that "the laws of the state in which the prosecution is pending" will give the witness protection from arrest while the witness is present, and that the witness will be paid the fees mentioned in the previous paragraph, the court "shall issue a subpoena . . . directing the witness to attend and testify in the court where the prosecution is pending" (*ibid.*; see also Colo. Rev. Stat. § 16-9-202(2)).

■ At issue here is a provision of the Uniform Act that permits a party in a criminal case to ask the trial court to "recommend[] that the witness be taken into immediate custody and delivered to an officer of this state to assure his or her attendance in this state" (Pen. Code, § 1334.3, subd. (a); see also Colo. Rev. Stat. § 16-9-202(3)), and that gives the court in the state where the witness is located the power to act upon that recommendation. This provision of the Uniform Act mirrors statutes in California and in most states allowing a trial court to order the confinement of material witnesses to ensure their presence at trial. (See Pen. Code, §§ 879, 881, 882; Studnicki, *Material Witness Detention: Justice Served or Denied?* (1994) 40 Wayne L.Rev. 1533.)

B.  *Evidence Code sections 240 and 1291*

Hearsay evidence, which is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove

the truth of the matter stated" (Evid. Code, § 1200), is generally inadmissible in California (*id.*, subd. (b)). But there are several statutory exceptions. Pertinent here is the one that allows admission at trial of a person's former testimony if that person is "unavailable as a witness" and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has" at trial. (*Id.*, § 1291, subd. (a).) A witness is considered to be unavailable if "the proponent of his or her statement has exercised *reasonable diligence* but has been unable to procure his or her attendance by the court's process." (*Id.*, § 240, subd. (a)(5), italics added.)

### C. *Code of Civil Procedure section 1219*

■ Code of Civil Procedure section 1219, originally enacted in 1872, provides that when a person has been found in contempt of court for refusal to perform an act that the person is capable of performing, the court may order the person jailed until that act is performed. (*In re Mark A.* (2007) 156 Cal.App.4th 1124, 1143 [68 Cal.Rptr.3d 106].) Subdivision (b), added to section 1219 in 1984, stated at the time of defendant's trial in this case: "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the *victim of a sexual assault* for contempt when the contempt consists of refusing to testify concerning that sexual assault." (See Stats. 1993, ch. 219, § 69.7, p. 1587.) (After defendant's trial, the Legislature in 2008 amended § 1219(b) to include victims of domestic violence.)

## III

In this court, the Attorney General has abandoned the argument he made in the Court of Appeal that section 1219(b) *prohibited* the prosecution from invoking the Uniform Act's custody-and-delivery provision. He now accepts the Court of Appeal's holding that section 1219(b), which prohibits the *jailing* of sexual assault victims for *contempt of court* based on their refusal to testify, does not preclude the prosecution from using the Uniform Act's custody-and-delivery provision. The Attorney General now argues that even though the prosecution in this case *could have* invoked that provision of the Uniform Act, it was not *required* to do so in order to show in this case the sexual assault victim's unavailability as a witness at defendant's trial. We agree, as discussed below.

■ In requiring that prior testimony be admissible at trial only when the person who previously testified has later become unavailable to testify, the Legislature sought to ensure that "only when necessary" is prior testimony to be substituted for live testimony, which is generally "the preferred form of

evidence." (*People v. Reed* (1996) 13 Cal.4th 217, 225 [52 Cal.Rptr.2d 106, 914 P.2d 184].) Live testimony compels a witness "to stand face to face with the jury" so it "may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." (*Mattox v. United States* (1895) 156 U.S. 237, 242–243 [39 L.Ed. 409, 15 S.Ct. 337].) But that assessment by the jury " 'is severely hampered' " when the " 'witness is absent and when his prior testimony is read into evidence. [Citation.] Only if the necessity . . . is clearly demonstrated may the defendant's right of confrontation be overcome . . . .' " (*People v. Louis* (1986) 42 Cal.3d 969, 983 [232 Cal.Rptr. 110, 728 P.2d 180].) Such necessity is shown, for instance, if a witness is unavailable to testify at trial notwithstanding a party's use of "reasonable diligence" in attempting to secure the presence of the witness. (Evid. Code, § 240, subd. (a)(5).)

Reasonable diligence, often called "due diligence" in case law, " 'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character.' " (*People v. Cromer* (2001) 24 Cal.4th 889, 904 [103 Cal.Rptr.2d 23, 15 P.3d 243].) Here, the Court of Appeal faulted the prosecution for not doing enough to obtain Colorado resident Lorene's presence as a material witness at defendant's trial. What the prosecution should have done, the Court of Appeal said, was to invoke the Uniform Act's provision that would have permitted the prosecution to ask a Colorado court to have Lorene taken into custody and transported to California as a witness for the prosecution.

As there is no published California case involving the Uniform Act's provision on custody and delivery of a material witness, the parties here rely on decisions from other states that have considered the issue. Three of these cases—*Gray v. Commonwealth* (1993) 16 Va.App. 513 [431 S.E.2d 86], *People v. Thorin* (1983) 126 Mich.App. 293 [336 N.W.2d 913], and *People v. Arguello* (Colo.Ct.App. 1987) 737 P.2d 436—generally support the Attorney General's view that to establish an out-of-state witness's unavailability at trial, a party is not required to invoke the Uniform Act's custody-and-delivery provision. A fourth case—*State v. Archie* (Ct.App. 1992) 171 Ariz. 415 [831 P.2d 414]—generally supports defendant's contrary view. In all four, however, the facts are quite different from the case before us. None of them resolves the issue before us here: Did the prosecution have to invoke the Uniform Act's custody-and-delivery provision before it could establish its use of due diligence in securing sexual assault victim Lorene's presence at defendant's trial? Our answer is "no," as explained below.

■ To have a material witness who has committed no crime taken into custody, for the sole purpose of ensuring the witness's appearance at a trial, is a measure so drastic that it should be used sparingly. (See, e.g., *State v. Reid*

(1976) 114 Ariz. 16 [559 P.2d 136, 145] ["Confinement of a witness, even for a few days, not charged with a crime, is a harsh and oppressive measure which we believe is justified only in the most extreme circumstances."].) Confinement would be particularly problematic when, as in this case, the witness is a sexual assault victim.

Although any crime victim may be traumatized by the experience, sexual assault victims are particularly likely to be traumatized because of the nature of the offense. To relive and to recount in a public courtroom the often personally embarrassing intimate details of a sexual assault far overshadows the usual discomforts of giving testimony as a witness. And the defense may, through rigorous cross-examination, try to portray the victim as a willing participant. (See generally Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom* (1977) 77 Colum. L.Rev. 1.) Also, seeing the attacker again—this time in the courtroom—is for many sexual assault victims a visual reminder of the harrowing experience suffered, adding to their distress and discomfort on the witness stand. (See Ellison, The Adversarial Process and the Vulnerable Witness (2001) pp. 16–17.) It comes as no surprise, therefore, that often a victim of sexual assault is hesitant to report the crime. Even fewer such crimes would be reported if sexual assault victims could be jailed for refusing to testify against the assailant.

Recognizing these concerns, the California Legislature in 1984 amended Code of Civil Procedure section 1219 to add subdivision (b). (Sen. Bill No. 1678 (1983–1984 Reg. Sess.) § 2.) That provision, as mentioned earlier, prohibits a trial court from *jailing for contempt* a sexual assault victim who refuses to testify against the attacker. As the author of that legislation explained to his fellow senators: "The purpose of [section 1219(b)] is not only to protect victims of sexual assault from further victimization resulting from imprisonment or threats of imprisonment by our judicial system, but also to begin to create a supportive environment in which more victims might come forward to report and prosecute [perpetrators of] sexual assault." (Sen. McCorquodale, Floor Statement, Sen. Bill No. 1678 (1983–1984 Reg. Sess.) May 1, 1984.) Enactment of section 1219(b) reflects the Legislature's view that sexual assault victims generally should not be jailed for refusing to testify against the assailant.

■ In this case, the prosecution acted reasonably when it chose not to request—even though permitted under the Uniform Act's custody-and-delivery provision—to have sexual assault victim Lorene taken into custody and transported from Colorado to California to testify at defendant's trial. As mentioned earlier, Lorene's refusal to testify at defendant's first scheduled trial led to a dismissal of the case against defendant. Thereafter, the prosecution refiled the charges against defendant. Lorene again told the prosecution

she would not testify against defendant, and she ignored a subpoena ordering her to appear at defendant's trial. It is highly unlikely that had Lorene been taken into custody, she would have become a cooperative witness. Moreover, if she had been transported against her will to California and then refused to testify, the trial court could not have held her in contempt and jailed her until she agreed to testify, because that remedy (ordinarily available when a witness refuses to testify) is not available when the witness who refuses to testify is a sexual assault victim. (§ 1219(b).) Having spoken directly to Lorene, the prosecutor was in the best position to assess the strength of her determination not to testify at defendant's trial. Based on that assessment, the prosecutor could reasonably conclude that invoking the Uniform Act's custody-and-delivery provision would not have altered Lorene's decision not to testify again about the sexual assault, and thus it would have been a waste of time and resources.

In holding that the prosecution in this sexual assault case did not use reasonable diligence in securing Lorene's presence at defendant's California trial, the Court of Appeal pointed to the prosecution's failure to invoke the Uniform Act's custody-and-delivery provision. In the court's words: "Lorene was an essential witness in this case, her appearance was crucial. The prosecution did not, under the circumstances of this case, use every reasonable means to secure her attendance and, therefore, did not exercise reasonable diligence." But confinement of a sexual assault victim to ensure her presence at the assailant's trial would, for reasons we discussed earlier, not be a reasonable means of securing the witness's presence.

Pertinent here is our decision in *People v. Smith* (2003) 30 Cal.4th 581 [134 Cal.Rptr.2d 1, 68 P.3d 302]. In that case, the trial court ruled that a sexual assault victim's refusal to testify at the defendant's trial made her unavailable as a witness. We rejected the defendant's argument that to get the victim to testify the trial court should have threatened to fine her. We said: "Trial courts 'do not have to take extreme actions before making a finding of unavailability.' " (*Id.* at p. 624.) In this sexual assault case, the prosecution's resort to the Uniform Act's custody-and-delivery provision to ensure victim Lorene's presence at defendant's trial would have been an action far more extreme than the fine at issue in *Smith*. Thus, the Court of Appeal here erred in reversing the trial court's ruling that Lorene was unavailable as a witness notwithstanding the prosecution's use of reasonable means to secure her presence at defendant's trial, and that therefore the prosecution could use at that trial the testimony that Lorene had previously given at defendant's preliminary hearing.

## DISPOSITION

We reverse the judgment of the Court of Appeal. We remand the matter to that court for consideration of defendant's remaining claims, which the Court of Appeal did not address.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.