Filed 4/30/14  P. v. Martir CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,**<br><br>      **Plaintiff and Respondent,**<br><br>      v.<br><br>**MANUEL DeJESUS MARTIR,**<br><br>      **Defendant and Appellant.** | **A137098**<br><br><br><br>**(San Francisco City and County Super. Ct. No. 214671)** |

Appellant Manuel DeJesus Martir appeals from his conviction, following a jury trial, of four counts relating to an incident of physical and sexual assault.  He contends (1) admission of the victim's preliminary hearing testimony was prejudicial error, and (2) admission of the victim's statements to a nurse during a sexual assault examination was prejudicial error.  We affirm.

## BACKGROUND[1]

In the early morning hours of December 21, 2009, law enforcement officers found Mary B. on the street, conscious but bleeding and naked from the waist down.  Mary was brought to the hospital around 2:00 a.m.  She was bleeding from her vagina and anus, and

---

[1]   Appellant was also charged with multiple counts relating to a separate incident of alleged sexual assault involving a different victim.  On all of these counts, the jury either acquitted appellant or failed to reach a verdict.  Because they are not relevant to this appeal, we omit further discussion of these charges or any underlying facts.

her perineum exhibited signs of trauma. Her face and neck had multiple lacerations and were embedded with glass shards. There was bleeding underneath the surface layer of her eyes, a condition which can be caused by choking. The treating physician testified Mary's injuries were approximately one hour old at the time she was treated, and were consistent with physical and sexual assault.

Mary did not testify at trial, but her preliminary hearing testimony was read to the jury. She was working as a prostitute on the night in question. Appellant, whom she did not previously know, picked her up in a brown Volvo and they agreed to exchange sex for money. Shortly after she got in his car, he broke a bottle over her head, cut her face and throat with the broken bottle, and began choking her. Mary drifted in and out of consciousness. She thought something penetrated her anus, but was not sure. She was not sure whether any other part of her body was penetrated. She thought she saw appellant's penis, but was not sure when. She did not remember how her clothes were removed or how she got out of the car. She denied taking any drugs that night, and testified she drank only one beer before the assault.

Police officers and a nurse testified about statements Mary made during the two days after the attack. A police officer interviewed Mary shortly after she arrived at the hospital. She told the officer she had been walking down the street when a man followed her on foot, attacked her with a glass bottle, cut her face, choked her, and raped her. She said she was in and out of consciousness during the attack. Police officers conducted a second interview that afternoon. Mary stated her attacker put his hand "into her rear area," but she could not remember whether or not he raped her or forced her to orally copulate him. A third police interview was conducted the following day. During this interview, Mary admitted she had been working as a prostitute that night and the attack took place inside a car. She again stated she had been attacked with a bottle and choked.

Nurse practitioner Ruth Ann Armstrong conducted a partial sexual assault examination of Mary starting at 8:00 a.m. on the morning of the attack. Mary stated her attacker had broken a bottle over her head, cut her face and neck, and choked her into unconsciousness. She told Armstrong the man put his finger in her anus. She also told

2

Armstrong, "I think he put his fingers in my vagina. I kept blacking out." Mary thought she orally copulated him but was not sure. Armstrong completed the sexual assault examination the following day. During this interview, Mary stated she did not remember if her attacker vaginally penetrated her. Mary denied using drugs within 96 hours of the incident, although a urine toxicology screen indicated the presence of cocaine and opiates.

Armstrong's physical examination of Mary revealed significant swelling of the labia, lacerations in the anal area, and blood in the area of the vagina and anus. Armstrong testified these injuries were consistent with sexual assault and/or trauma.

Police found a brownish Volvo near where Mary had been found. Inside the car was broken glass, a large amount of blood, and articles of clothing matching the description of clothes Mary told police she had been wearing. The original owner of the Volvo had sold it to appellant in May 2009. Appellant's fingerprint was found on a piece of paper in the Volvo.

Appellant, through an interpreter, testified at trial in his own defense. On the night in question, he picked up Mary in his Volvo. She did not have any injuries at that time. Appellant and Mary agreed that, in exchange for sex, they would both smoke appellant's drugs and appellant would pay Mary $20. Mary removed her shoes and pants, and they smoked appellant's rock cocaine. Mary began to orally copulate appellant. She then asked him for more drugs; when he refused, they began to physically fight. During the fight, appellant heard a glass bottle, which had been in the backseat, break. Mary came at appellant with the broken bottle in her hand and the two struggled over it, but appellant never had the bottle in his hands. Eventually appellant pushed Mary out of the car. Since he could not find his car keys, appellant left the scene on foot.

Appellant admitted falsely telling police officers, in an interview after the incident, he had never seen Mary and did not have a car. Appellant also told police officers he "might have started beating her since I was all drugged up, but that's where I forget. I lost consciousness, but it's not that I — it's not that I had wanted to strike her. I got

3

angry, and so I also struck her, but my — my intention was never to hit her, but she — she had asked for it."

The jury convicted appellant of forcible sexual penetration of the vagina by a foreign object (Pen. Code, § 289, subd. (a)(1)(A)), forcible sexual penetration of the anus by a foreign object (*id.*, § 289, subd. (a)(1)(A)), battery causing serious bodily injury (*id.*, § 243, subd. (d)), and assault with a deadly weapon (*id.*, § 245, subd. (a)(1)).[2] The jury acquitted appellant of forcible rape (*id.*, § 261, subd. (a)(2)), forcible sodomy (*id.*, § 286, subd. (c)(2)(A)), and attempted murder (*id.*, §§ 664, 187, subd. (a)). The jury could not reach a verdict on a count of false imprisonment (*id.*, § 236) and, on the prosecution's motion, this count was dismissed.

## DISCUSSION

I. *Preliminary Hearing Testimony*

Appellant first contends the admission of Mary's preliminary hearing testimony was error under the confrontation clause of the United States Constitution and Evidence Code section 1291 because Mary was not unavailable to testify at trial. We disagree.

A. *Factual Background*

Before trial, appellant filed an in limine motion to exclude Mary's preliminary hearing testimony if she failed to testify at trial. An evidentiary hearing was held examining the prosecution's efforts to secure Mary as a witness at trial.

Prior to the preliminary hearing, a prosecution investigator personally served Mary with a subpoena directing her to appear at the preliminary hearing. Mary was argumentative and expressed a reluctance to come to court, saying she wanted to move on. However, she did appear and testify.

After the preliminary hearing, over a period of 10 months, Mary was personally served with four subpoenas ordering her to appear for four separate court dates. An additional subpoena for one of the four court dates was left with the front desk at her residence, pursuant to a telephonic agreement between the investigator and Mary. Mary

---

[2] The jury also made findings on several enhancement allegations.

did not appear in court for any of the four dates for which she was subpoenaed following the preliminary hearing.

At the time of each personal service and during the telephone conversation, Mary informed the investigators she would not appear in court and/or did not want to cooperate with the prosecution. Mary also telephoned the assistant district attorney after receiving one of the subpoenas. She was very agitated and stated she was not coming to court and wished to be left alone.

When the last subpoena was served, after initially refusing to appear in court, Mary eventually agreed to accept a ride to court from investigators. However, when the investigators came to her apartment on the designated day, Mary did not answer the door. Instead, they found a note stating, "Sorry I can't make it today. So do, Ms. DA, what you need to do. Stop coming by this door. Thank you. Mary."

Based on this evidence, the trial court concluded the prosecution had exercised reasonable diligence in attempting to secure Mary's presence at trial, and therefore she was unavailable to testify and her preliminary hearing testimony could be admitted.

B. *Analysis*

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620 (*Herrera*).) However, there is " ' "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] was subject to cross-examination . . . ." ' " (*Id.* at p. 621.) This exception "is codified in the California Evidence Code. [Citation.] Section 1291, subdivision (a)(2), provides that 'former testimony,' such as preliminary hearing testimony, is not made inadmissible by the hearsay rule if 'the declarant is unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant

with an interest and motive similar to that which he has at the hearing.' " (*Ibid.*, fns. omitted.)[3]

"A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to obtain the witness's presence at the trial." (*Herrera, supra,* 49 Cal.4th at p. 622.)  The "Evidence Code features a similar requirement for establishing a witness's unavailability.  Under section 240, subdivision (a)(5) . . . , a witness is unavailable when he or she is '[a]bsent from the hearing and the proponent of his or her statement has exercised *reasonable diligence* but has been unable to procure his or her attendance by the court's process.' " (*Ibid.*)  Accordingly, "to establish unavailability, the prosecution must show that its efforts to locate and produce a witness for trial were reasonable under the circumstances presented." (*Id.* at p. 623; see also *id.* at p. 622 [holding " 'California law and federal constitutional requirements [regarding the reasonable diligence inquiry] are the same' "].)

When the witness is a victim of sexual assault, the determination of reasonableness implicates another statutory provision.  Code of Civil Procedure section 1219, subdivision (b), provides, in relevant part, "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the victim of a sexual assault . . . for contempt when the contempt consists of refusing to testify concerning that sexual assault . . . ."  The California Supreme Court has held the enactment of this provision "reflects the Legislature's view that sexual assault victims generally should not be jailed for refusing to testify against the assailant." (*People v. Cogswell* (2010) 48 Cal.4th 467, 478 (*Cogswell*).)

"We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard [citation], and independently review whether the facts demonstrate prosecutorial good faith and due diligence [citation]." (*Herrera, supra,* 49 Cal.4th at p. 623.)

---

[3]  Appellant does not argue he had insufficient prior opportunity to cross-examine Mary.

6

Appellant contends the trial court erred in finding Mary unavailable because the prosecution failed to seek an order taking Mary into custody to ensure her presence in court or an order fining her for refusing to appear or testify. Similar arguments have been rejected by the California Supreme Court in *Cogswell, supra,* 48 Cal.4th 467 and *People v. Smith* (2003) 30 Cal.4th 581 (*Smith*).

In *Cogswell*, a victim of sexual assault testified at the defendant's preliminary hearing, but refused to voluntarily appear at trial and subsequently refused to comply with a subpoena to appear. (*Cogswell, supra,* 48 Cal.4th at pp. 471-472.) The victim informed the prosecutor and the prosecution's investigator that she would not appear at trial. (*Id.* at p. 473.) The trial court found the witness unavailable and allowed her preliminary hearing testimony admitted at trial. (*Ibid.*) On appeal, the defendant argued the prosecution failed to show reasonable diligence because it did not seek to take the victim into custody to secure her presence at trial. (*Ibid.*) Although the victim resided out of state, such a measure, similar to orders directing the confinement of material witnesses to ensure their presence at trial, was authorized by statute. (*Id.* at pp. 471, 475.)

*Cogswell* held that, even though the prosecution "*could have*" sought to take the victim into custody to secure her presence at trial, "it was not *required* to do so in order to show in this case the sexual assault victim's unavailability as a witness at defendant's trial." (*Cogswell, supra,* 48 Cal.4th at p. 476.) The court noted, "To have a material witness who has committed no crime taken into custody, for the sole purpose of ensuring the witness's appearance at a trial, is a measure so drastic that it should be used sparingly. [Citation.] Confinement would be particularly problematic when, as in this case, the witness is a sexual assault victim." (*Id.* at pp. 477-478.)[4] The court concluded that,

---

**4** *Cogswell* explained the special concerns regarding witnesses who are victims of sexual assault: "To relive and to recount in a public courtroom the often personally embarrassing intimate details of a sexual assault far overshadows the usual discomforts of giving testimony as a witness. And the defense may, through rigorous cross-examination, try to portray the victim as a willing participant. [Citation.] Also, seeing the attacker again — this time in the courtroom — is for many sexual assault victims a visual reminder of the harrowing experience suffered, adding to their distress and

because of the victim's statements to the prosecution that she would not testify against the defendant, her refusal to appear at trial, and her refusal to comply with a subpoena ordering her to appear, "[i]t is highly unlikely that had [the victim] been taken into custody, she would have become a cooperative witness. Moreover, if she had been transported against her will to California and then refused to testify, the trial court could not have held her in contempt and jailed her until she agreed to testify, because that remedy (ordinarily available when a witness refuses to testify) is not available when the witness who refuses to testify is a sexual assault victim. [Citation.] Having spoken directly to [the victim], the prosecutor was in the best position to assess the strength of her determination not to testify at [the] defendant's trial. Based on that assessment, the prosecutor could reasonably conclude that [taking the victim into custody to secure her presence at trial] would not have altered [her] decision not to testify again about the sexual assault, and thus it would have been a waste of time and resources." (*Id.* at pp. 478-479.)

In *Smith*, our Supreme Court also affirmed a trial court ruling finding a victim of sexual assault unavailable to testify at trial. In that case, the witness refused to testify at the penalty phase of the capital defendant's trial unless she could express her opposition to the death penalty. (*Smith, supra,* 30 Cal.4th at p. 621.) The trial court "questioned [the witness] under oath and asked whether additional time or prosecution for criminal contempt would change her mind. It had no power to incarcerate this victim of a sexual assault for refusing to testify concerning that assault. [Citation.] But [the] defendant argue[d] the court should at least have fined her for contempt of court." (*Id.* at p. 624.) The Supreme Court disagreed, stating: "Trial courts 'do not have to take extreme actions before making a finding of unavailability.' " (*Ibid.*; see *Cogswell, supra,* 48 Cal.4th at p. 479 [discussing *Smith*].)

---

discomfort on the witness stand. [Citation.] It comes as no surprise, therefore, that often a victim of sexual assault is hesitant to report the crime. Even fewer such crimes would be reported if sexual assault victims could be jailed for refusing to testify against the assailant." (*Cogswell, supra,* 48 Cal.4th at p. 478.)

Appellant attempts to distinguish *Cogswell* and *Smith* on their facts, noting Mary testified at the preliminary hearing despite expressing reluctance when served with the subpoena for that hearing and never said she would refuse to testify if brought to court. Therefore, appellant argues, there was an insufficient showing Mary would not have testified had she been taken into custody to ensure her presence in court or threatened with fines.

We disagree. Mary did testify at the preliminary hearing. However, after the preliminary hearing Mary ignored five separate subpoenas ordering her to appear for four court dates. Over a 10-month period, she consistently informed investigators and the assistant district attorney she did not want to appear in court. Although she once reluctantly agreed to accept a ride to court, she subsequently left a note informing the investigators she would not be appearing. In light of these facts, it was not unreasonable for the prosecution to conclude that neither taking her into custody to ensure her presence at trial nor a fine would have altered Mary's decision not to testify at trial. Because Mary was therefore unavailable, the admission of her preliminary hearing testimony was not error.

## II. *Mary's Statements to Armstrong*

Appellant next challenges the trial court's admission of statements made by Mary to Armstrong, during the sexual assault examination, describing the attack.

Appellant first contends the admission violated his rights under the confrontation clause. We will assume the challenged statements are testimonial. (See *People v. Vargas* (2008) 178 Cal.App.4th 647, 660-662 [holding victim's statements to nurse during a sexual assault examination are testimonial].) Appellant rests his constitutional argument on a challenge to the trial court's finding Mary was unavailable. We have already rejected that argument, and therefore reject appellant's confrontation clause challenge.

Appellant next contends the statements were inadmissible hearsay. The trial court admitted the statements under the hearsay exception for spontaneous statements pursuant to Evidence Code section 1240. The parties dispute whether the trial court also admitted

9

them as statements explaining the infliction of physical injury under Evidence Code section 1370 and whether the statements are admissible under that section.

We need not decide if the trial court erred in admitting the challenged hearsay statements because any error was harmless. As we explain below, it is not reasonably probable the jury verdicts would have been more favorable to appellant had these statements been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

As to the convictions for assault and battery, the statements Mary made to Armstrong — her attacker hit her with a bottle, cut her face, and choked her — were entirely cumulative to those made in her preliminary hearing testimony and her statements to police officers.

As to the convictions for vaginal and anal sexual penetration, appellant argues the statements made to Armstrong were more "specific and definite" than her preliminary hearing testimony and statements to police. As an initial matter, Mary consistently said, in her statements to Armstrong as well as her preliminary hearing testimony and statements to police, that she was in and out of consciousness during the attack and could not remember everything that happened. Moreover, while there are some inconsistencies between Mary's statements to Armstrong and her preliminary hearing testimony and statements to police, the inconsistencies were helpful to the defense in impeaching Mary. Indeed, appellant's counsel so noted in his closing argument, telling the jury: "And what do we have from . . . Armstrong herself, that Mary . . . was completely inconsistent in describing these possible sex acts, vaginal intercourse, completely inconsistent. Oral copulation, completely inconsistent."

In any event, the physical evidence supporting the sexual penetration convictions was overwhelming. Mary was bleeding from the vagina and anus, exhibited significant swelling of the labia, and had lacerations in the anal area. Both Mary's treating physician and Armstrong testified her injuries were consistent with trauma and/or sexual assault.[5]

---

[5]   Appellant attempts to undermine this evidence, pointing to Armstrong's testimony that the injuries could have resulted from other causes. Armstrong testified, on cross-examination, that anal bleeding could be caused by hemorrhoids, a tumor, or skin

Appellant points to the lack of DNA evidence linking him to the sexual assaults, and speculates a different attacker could have committed them. However, appellant admitted he was with Mary that night, she was not injured when she entered his car, and they engaged in a physical fight. In addition, the credibility of appellant's version of events was undermined by his admission that he lied to police officers.

Finally, contrary to appellant's contention, the fact that the jury acquitted appellant of three counts and could not reach a verdict on a fourth does not indicate the evidence on the remaining counts was close. Although the evidence of forcible sexual penetration was overwhelming, the evidence that the penetration was caused by appellant's penis, as required for convictions on the rape and sodomy counts, was significantly weaker. Indeed, the prosecutor conceded during closing arguments: "We do know that her vagina had been injured by something. [¶] We don't know what he did to her vagina. We don't know if he put his penis in there"; and "as to her anus, we clearly know he penetrated her. We don't know for sure was it his penis that he had behind her choking her, or did he put his fingers in there." With respect to the attempted murder and false imprisonment charges, Mary's statements to Armstrong supported these charges to the same extent as her other statements and testimony. That the jury did not convict appellant on those counts demonstrates Mary's statements to Armstrong were not dispositive in the jury's mind.[6]

---

irritation; vaginal bleeding could be caused by a vaginal infection or consensual sex; and swelling of the labia could be caused by certain infections, cysts, or tumors. However, it strains credulity to believe Mary simultaneously had those independent conditions at the time appellant physically assaulted her.

[6] Because we find the only error harmless, we reject appellant's contention that cumulative error prejudiced his rights to due process and a fair trial.

DISPOSITION

The judgment is affirmed.[7]

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.

---

**7** We note the abstracts of judgment do not include the superior court case number.