Filed 12/27/24  P. v. Wyatt CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>OTIS WYATT,<br><br>        Defendant and Appellant. | A167943<br><br>(Alameda County<br>Super. Ct. No. 17CR004380) |

In January 2023, a jury convicted Otis Wyatt of second degree murder and found true accompanying firearm enhancements, and the trial court sentenced him to 25 years to life in prison.  He appeals and argues, among other things, that the prosecution violated his Sixth Amendment right to confrontation.  We agree and reverse.

## BACKGROUND

In July 2018, the prosecution charged Wyatt with murdering Darrell Daniel, Jr., and alleged he personally discharged a firearm causing great bodily injury and death.  It alleged Wyatt shot Daniel, Jr. in October 2016 near the intersection of Willow Street and 11th Street in Oakland.  ShotSpotter reported the shooting, and police officers found Daniel, Jr. lying in the street.

Officers spoke with two witnesses in recorded interviews.  The first said he was near the intersection before and after the shooting (D.K.).  When

1

Daniel, Jr. arrived, Televe Johnson — a friend of Wyatt's — gave Wyatt a gun to kill Daniel, Jr. After the shooting, Wyatt told D.K. that Daniel, Jr. "had it coming."

The second witness was a felon previously convicted of a crime of moral turpitude (E.R.). Just before E.R.'s interview, officers arrested him for murder. Police told him they'd talk to the prosecutor if he gave them information about Daniel, Jr.'s killing. During the interview, E.R. told police he saw Wyatt kill Daniel, Jr. He also said Daniel, Jr. had been shooting people in the neighborhood and threatened to kill Johnson. But at the preliminary hearing, he testified he lied to avoid punishment. He also said he was schizophrenic, had been hallucinating and hearing voices since he was 9 years old, and he was not medicated the night Daniel, Jr. died. Instead, he drank Hennessy and took heroin and methamphetamine. He also stated he did not want to testify but was compelled to by subpoena. He recanted his statements to police, but the prosecutor impeached him with the recording of his interview. The day before the hearing, he was committed to a mental health facility for trying to harm himself and refusing to take his medication.

On September 29, 2022, Wyatt withdrew his time waiver, and the matter was set for trial. In November, the prosecutor moved to admit E.R.'s preliminary hearing testimony — along with the prosecutor's impeachment of him — due to E.R.'s unavailability. (Evid. Code, §§ 240, 1291, 1294.) The trial court heard the motion on December 1 and 15.

At the hearing on December 1, 2022, the prosecutor relayed his efforts to locate E.R. On October 6, 2022, the prosecutor asked inspector Phil Green to find E.R. Green searched three databases and found E.R. had an

outstanding Alameda County warrant.[1]  Green also saw E.R. had an address in Conyers, Georgia as of March 2022.  Green then searched the Federal Bureau of Investigation's database and found police had arrested E.R. four times in Georgia since March 2020.  On October 19, Green spoke with police in Conyers.  They told him that E.R. lived at an address in Covington, Georgia.  Later that day, Green spoke with police in Covington and learned the address was in Newton County, not the City of Covington.  On October 20, Green spoke with Newton County sheriffs.  They told him that E.R. had a Georgia driver's license listing the Newton County address.

On October 28, 2022, the prosecutor sent a subpoena to Newton County for service on E.R.  In his affidavit of support, the prosecution stated E.R. was "a necessary and material witness" and no "other witnesses have come forward saying the defendant shot the victim."  On November 2 or 3, a Newton County investigator tried to serve E.R. at the known address, but E.R. had not lived there for two years.  Green searched the four databases again on November 14 and found nothing.  On November 30, he searched the databases again and found a new address for E.R. in Conyers.  He spoke with police in Conyers, and they found E.R. at the address.  Instead of arresting him on the Alameda County warrant or serving the subpoena, the police obtained his phone number.  Green called him several times and left a voicemail, offering to pay his travel expenses.

At the conclusion of the hearing on December 1, 2022, the prosecution acknowledged it had not demonstrated due diligence and asked for more time

---

[1] On our own motion, we take judicial notice of the length of E.R.'s probation, various petitions to revoke his probation, and an arrest warrant filed February 26, 2020, in Alameda County Case No. H58531.  (Evid. Code, § 452, subd. (d).)  At oral argument, both parties agreed our taking judicial notice was permissible.

so it could continue its efforts to locate E.R. The trial court granted the request and noted no trial date had been set until Wyatt withdrew his time waiver.

The hearing continued on December 15, 2022 — three days after the jury had been sworn in. The prosecutor had prepared another subpoena and sent it to Rockdale County, the county in which Conyers was located. Rockdale County investigators found three addresses for E.R. and visited them daily. On December 12, they learned where E.R. worked. They tried to enter his workplace twice but were refused entry.

Ultimately, the trial court found E.R. was essential but unavailable, and the prosecutor exercised due diligence in trying to secure his presence at trial. It also concluded the prosecution had no legal duty to monitor E.R. before Wyatt withdrew his time waiver. The court admitted E.R.'s preliminary hearing testimony, including the statements used to impeach him.

During opening statements at trial, the prosecutor told the jury E.R. was his "primary witness" and that E.R. saw Wyatt shoot Daniel, Jr. He also told the jury E.R. would testify or his former testimony would be read to them. D.K. recanted his prior statements while testifying, stating police threatened him with murder charges before his interview and that he "was just putting together a bunch of stuff and hoping they would leave me alone," but the prosecutor showed his interview to the jury. A third witness testified they saw Wyatt near the scene sometime before the shooting. During closing arguments, the prosecutor centered his case on E.R.'s testimony. He told the jury E.R.'s recorded statement alone "prove[s] the entire case." E.R. provided "intent," "identity," "act causing death," and "motive." He told the jury he put

4

on other evidence only to "corroborate" what E.R. said. He then explained all the evidence corroborating E.R.'s statement.

The jury convicted Wyatt of second degree murder and found he personally used and discharged a firearm causing great bodily injury and death. The trial court struck the punishment for discharging a firearm but sentenced Wyatt to 25 years to life for second degree murder and personally using a firearm.

## DISCUSSION

Wyatt argues the trial court violated his Sixth Amendment right to confrontation. Specifically, he contends the court erred in admitting E.R.'s preliminary hearing testimony because the prosecutor failed to exercise due diligence or act in good faith to secure E.R.'s presence at trial. We agree.

The state and federal Constitutions guarantee a criminal defendant the right to confront the prosecution's witnesses. (*People v. Herrera* (2010) 49 Cal.4th 613, 620.) But the right is not absolute. (*People v. Foy* (2016) 245 Cal.App.4th 328, 338.) An exception exists " 'when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination.' " (*Ibid.*) Constitutional unavailability "requires a determination that the prosecution satisfied its obligation of good faith in attempting to obtain [the witness's] presence." (*Herrera*, at pp. 622–623.) The proponent of the evidence must show the witness is unavailable and "that it made a 'good-faith effort' " or "exercised reasonable or due diligence to obtain the witness's presence at trial." (*People v. Sánchez* (2016) 63 Cal.4th 411, 440; *Herrera,* at p. 623; *Foy,* at p. 339.) California law and federal constitutional requirements on this issue are " 'in harmony.' " (*People v. Smith* (2003) 30 Cal.4th 581, 609.)

5

Reasonable diligence — also called due diligence — is described as " ' "untiring efforts in good earnest [and] efforts of a substantial character." ' " (*People v. Cogswell* (2010) 48 Cal.4th 467, 477.)  We consider " 'the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored.' " (*People v. Herrera*, *supra*, 49 Cal.4th at p. 622.)  "[D]iligence has been found when the prosecution's efforts are timely, reasonably extensive and carried out over a reasonable period." (*People v. Bunyard* (2009) 45 Cal.4th 836, 855–856.)  While a "court cannot 'properly impose upon the People an obligation to keep "periodic tabs" on every material witness in a criminal case' " (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706), the due diligence requirement "is more stringent" when "the absent witness is vital to the prosecution's case and his credibility is suspect" (*People v. Louis* (1986) 42 Cal.3d 969, 991 (*Louis*)).  We "defer to the trial court's factual findings that are supported by substantial evidence, but we 'independently review whether the facts demonstrate prosecutorial good faith and due diligence.' " (*People v. Foy*, *supra*, 245 Cal.App.4th at p. 339.)

*Louis* is instructive.  There, the prosecutor's diligence requirement was "particularly high" because the missing witness was critical to the prosecutor's case. (*Louis*, *supra*, 42 Cal.3d at p. 991.)  He provided the only evidence identifying the defendant as the shooter. (*Id.* at p. 989.)  Moreover, no witness's "credibility was more suspect." (*Ibid.*)  He had been convicted of several felonies, committed to a hospital for the "criminally insane," and had to be compelled to attend court appearances. (*Ibid.*)  The Supreme Court concluded he "was precisely the type of witness that a jury needs to scrutinize in person in order to intelligently evaluate his credibility." (*Ibid.*)

6

E.R., like the witness is *Louis*, was critical to the prosecutor's case. (*Louis*, *supra*, 42 Cal.3d at p. 989.) According to the prosecutor, he was the only witness "saying the defendant shot the victim." More importantly, the prosecutor built his case around him. He told the jury E.R. was "our primary witness." During closing arguments, he told the jury E.R.'s recorded statement alone "prove[s] the entire case," and that E.R. provided "intent," "identity," "act causing death," and "motive." He said he put on other evidence only to "corroborate" E.R.'s testimony, and then spent the majority of his closing argument explaining how the other evidence corroborated E.R.'s version of events. Indeed, the Attorney General concedes he was an essential witness.

And like *Louis*, E.R.'s credibility was suspect. (*Louis*, *supra*, 42 Cal.3d at p. 989.) He was a felon convicted of a crime of moral turpitude who repeatedly violated his probation. Moreover, police had arrested E.R. for murder just before he incriminated Wyatt, and officers told him they'd talk to the prosecutor if he gave them information about Daniel, Jr.'s killing. Later, he said he lied to avoid prison. He was also a diagnosed schizophrenic who was not medicated the night Daniel, Jr. died, instead drinking alcohol and taking methamphetamine and heroin. And like the witness in *Louis*, he too was committed to a mental health facility and had to be compelled to attend court. (*Ibid.*) Given all of this, "the diligence required of the prosecution" was "particularly high." (*Id.* at p. 991.)

The prosecutor's efforts to secure E.R. for trial do not meet the duty imposed by *Louis*. (*Louis*, *supra*, 42 Cal.3d at pp. 991–993 [prosecutor failed to exercise due diligence where, among other things, it could have invoked material witness provisions of Penal Code].) The prosecutor had an Alameda County arrest warrant — issued in February 2020 — that could have secured

7

E.R.'s presence at trial, and it knew E.R. did not want to testify. Like the witness in *Louis*, E.R. had to be compelled by subpoena to testify at previous hearings. (*Id.* at p. 989.) The prosecutor did not ask the Georgia police to use the warrant. Instead, the Georgia police knocked on E.R.'s door and asked for his phone number, then Green left him a voicemail effectively tipping E.R. off. And like *Louis*, there were statutes the prosecutor chose not to use to secure his presence. (Pen. Code, § 1334.3, subd. (a); *Louis*, at p. 993.) Moreover, despite E.R.'s multiple probation violations, it appears the prosecution made no effort to keep track of him in the years between Wyatt's preliminary hearing and his withdrawal of his time waiver. (*Louis*, at p. 991 [the prosecutor has a duty " 'to use reasonable means to prevent a present witness from becoming absent.' "].) Thus, the trial court erred in concluding E.R. was an unavailable witness. (*Id.* at pp. 991–993.)

The error was not harmless. (*Louis*, *supra*, 42 Cal.3d at p. 994 [error admitting prior testimony of absent critical witness is " 'clearly prejudicial' " under *Chapman v. California* (1967) 386 U.S. 18.) At oral argument, the Attorney General conceded it did not know if the jury would have convicted Wyatt without E.R.'s statements. Moreover, D.K.'s statements to the police were brief and vague, and he later denied Wyatt had implicated himself.[2]

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with our opinion.

---

[2] Given our conclusion, we need not address Wyatt's remaining claims on appeal. Also, Wyatt has filed a petition for writ of habeas corpus in case No. A171810. By separate order, we deny that petition.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.

A167943; *People v. Wyatt*