Filed 10/31/23  P. v. Gutierrez CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>RYAN JOSHUA GUTIERREZ,<br><br>        Defendant and Appellant. | A164741<br><br>(Alameda County<br>Super. Ct. No. 16CR016265) |

A jury convicted defendant Ryan Joshua Gutierrez of voluntary manslaughter and found he personally used a firearm in the commission of that offense.  The jury also convicted him of two counts of unlawful firearm possession.  He admitted a prior strike conviction and the trial court sentenced him to prison.  On appeal, defendant contends the admission of a witness's preliminary hearing testimony at trial violated his right to confrontation and his due process right to a fair trial under the federal Constitution because the prosecutor failed to exercise due diligence to secure the witness's presence at trial.  He further contends his stipulation to the prior strike was not knowing and voluntary because he was not fully advised of his constitutional rights.  We disagree and affirm.

1

# BACKGROUND

In 2018, the prosecution charged defendant with murder and alleged an enhancement for personally discharging a firearm causing death, personal infliction of great bodily injury, and intentional discharge of a firearm (count 1). The prosecution also charged defendant with two counts of unlawful possession of a firearm (counts 2 & 3). The information further alleged defendant had suffered three prior convictions, one of which—residential burglary—constituted a prior strike.

At trial, the prosecution offered evidence that in December 2016, Eder Mike Marroquin was shot and killed following an alcohol-fueled dispute at a holiday party. Jesus Ramirez witnessed the incident. According to his preliminary hearing testimony, which was read to the jury, Ramirez said the dispute began as a friendly disagreement. Eventually, the argument became more heated; Ramirez urged defendant to take a break and cool down. He also attempted to diffuse the situation by encouraging Marroquin to leave the party with him. As the two men attempted to leave, defendant mumbled something to Marroquin. Marroquin turned around and punched defendant in the face, causing him to fall to the ground. Defendant responded by pulling out a gun and shooting—and killing—Marroquin.

Concerned for his and his family's safety, Ramirez told law enforcement officers at the scene that he did not witness the shooting. However, once at the police station—after gaining assurances he and his family would be protected—Ramirez explained what he had witnessed.

Defendant testified Ramirez was not present during any part of the altercation. He stated he did not intend to kill Marroquin, and that he acted in self-defense because he thought his life was in danger.

2

Before the jury reached a verdict, defendant admitted suffering a prior strike conviction. The jury acquitted him of murder as charged in count 1 but convicted him of the lesser included offense of voluntary manslaughter. It found true the allegation that he personally used a firearm in the commission of the voluntary manslaughter. It also found him guilty of unlawful possession of a firearm as charged in counts 2 and 3. The trial court sentenced defendant to 15 years, eight months in prison.

## DISCUSSION

## I.

### *The Prosecutor Exercised Due Diligence to Secure the Witness's Attendance at Trial.*

Defendant argues admission of Ramirez's preliminary hearing testimony violated his federal constitutional right to confrontation, which in turn deprived him of his rights to due process and a fair trial. He contends the preliminary hearing testimony was inadmissible because the prosecutor failed to establish due diligence in securing Ramirez's presence at trial. We disagree.

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620 (*Herrera*).) However, that right is not absolute. An exception exists when a witness is unavailable and, at a previous court proceeding against the same defendant, has given testimony that was subject to cross-examination. (Evid. Code, § 1291, subd. (a)(2); all further statutory references are to this code; *Herrera*, at p. 621.) Under federal constitutional law, such testimony is admissible if the prosecution shows it made "a good-faith effort" to obtain the presence of the witness at trial. (*Barber v. Page* (1968) 390 U.S. 719, 725.) Under California law, the witness's prior recorded testimony is admissible if

the prosecution used reasonable or due diligence in its unsuccessful efforts to locate the witness.  (§ 240, subd. (a)(5); *Herrera*, at p. 622.)

The prosecution has the burden of showing by competent evidence that the witness is unavailable.  (*People v. Smith* (2003) 30 Cal.4th 581, 609) and "that it made a 'good-faith effort' . . . or, equivalently, exercised reasonable or due diligence to obtain the witness's presence at trial." (*People v. Sánchez* (2016) 63 Cal.4th 411, 440.)  Reasonable or due diligence has been described as " ' "untiring efforts in good earnest, efforts of a substantial character." ' " (*People v. Cogswell* (2010) 48 Cal.4th 467, 477.)  Considerations relevant to this inquiry " 'include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored.' " (*Herrera, supra*, 49 Cal.4th at p. 622.)  In cases finding inadequate diligence, the efforts of the prosecution have been perfunctory or obviously negligent.  (*People v. Torres* (2020) 48 Cal.App.5th 731, 748.)  Conversely, diligence has been found when the prosecution's " 'efforts are timely, reasonably extensive and carried out over a reasonable period.' " (*Ibid.*)

"On review we defer to the trial court's factual findings that are supported by substantial evidence, but we 'independently review whether the facts demonstrate prosecutorial good faith and due diligence.' " (*People v. Foy* (2016) 245 Cal.App.4th 328, 339.)  We conclude the prosecution exercised due diligence in its efforts to locate Ramirez and secure his attendance at trial.

At the June 17, 2021 due diligence hearing, the prosecutor and district attorney investigator Randy Brandwood detailed their efforts to locate Ramirez as follows:  In early March 2021,[1] defendant withdrew his time

---

[1]  Unless otherwise specified, all further references to dates occur in 2021.

waiver for trial. Trial was set to begin in late summer of 2021; however, following the unexpected resolution of two of defense counsel's cases, defendant's case was sent to the trial department on May 17. That same day, the prosecutor asked inspector Brandwood for help locating Ramirez. Brandwood searched a county database to determine whether Ramirez had prior arrests or was in custody. Brandwood found an address in Hayward, where Ramirez reportedly had been living at the time of the 2016 homicide. Brandwood drove to the address and spoke to the home's occupant, who said Ramirez did not reside there. The occupant did not know Ramirez. Brandwood then searched a second database, where he found another possible address for Ramirez on Princeton Street in Hayward. Brandwood also ran Ramirez's driver's license through a statewide database and found a third potential address for Ramirez in Riverside.

On May 19, Brandwood went to the Princeton Street address in Hayward, where he spoke to a woman who resided there. She confirmed that her son, Jesus Ramirez, lived at the address, but she declined to share his phone number. Brandwood visited the Princeton Street address twice more; on May 21, he asked the Alameda County Sheriff's office to help him set up a surveillance team to watch the Princeton Street house during the evenings; Brandwood also participated in the surveillance. On May 28, Brandwood returned to the house with a photo of Ramirez—which he had not done during his initial visit—and showed it to a male occupant. The man confirmed he had a brother named "Jesus Ramirez" who lived at the house, but the man in the photograph was not his brother.

At some point between May 19 and 28, Brandwood asked the Riverside Police Department for help locating Ramirez. Police tried—but were unable—to locate Ramirez at the Riverside address listed on his driver's

license.  Brandwood also created a "Track" flyer with Ramirez's photo on it, which he sent to all law enforcement agencies in the Bay Area.

On May 28, Brandwood discovered a police report from 2020 for Ramirez in Bentonville, Arkansas.  From that report, he learned Ramirez had been arrested in 2020 for domestic violence against his then girlfriend, C.R.  He asked the Bentonville Police Department for help locating Ramirez.  A local database indicated Ramirez had terminated the utilities at the Bentonville address and moved out shortly after the arrest.

Brandwood spoke with C.R., who said she and Ramirez separated shortly after the domestic violence incident.  She moved to Hot Springs, Arkansas; she had not seen Ramirez since 2020, but her friends had reported he was in Hot Springs.  Brandwood then contacted the FBI for assistance in locating Ramirez.  Using a federal database, the FBI found recent pawn shop slips showing Ramirez had pawned items at a shop in Hot Springs.  Brandwood asked the Garland County District Attorney's Office in Hot Springs for help locating Ramirez.

Brandwood gave the Hot Springs address to the prosecutor, who prepared an out-of-state subpoena (§ 1334).  On June 4, the prosecutor filed the necessary paperwork with the court; that same day, the court approved the order and issued the subpoena.  Immediately thereafter, the prosecutor emailed the documents to the Garland County District Attorney's Office, and he sent a physical copy via overnight mail.  He also provided Brandwood's investigative notes, as well as a letter to Ramirez explaining how to make travel arrangements through the district attorney's office.

Based on the testimony and evidence presented at the due diligence hearing, the trial court determined the prosecution had taken "immediate[]" and "sustained" efforts to find Ramirez as soon as the case was put on the

docket in May.  The court agreed Ramirez was a "very important" witness and it would be better to have him there "in person."  Nevertheless, the court concluded the leads had been "competently explored."  Given "the time waiver pulling and the other trials," the trial court determined the prosecution had acted in a timely manner.

Although defendant faults the prosecution for not starting its search for Ramirez sooner, spending too long pursuing a dead end, and failing to adequately follow up on leads in Arkansas, the record clearly reflects the prosecution engaged in " 'untiring efforts in good earnest.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 675.)  Once the case was sent to the trial department, the prosecutor immediately enlisted the help of investigator Brandwood in locating Ramirez.  (See *id.* at pp. 675-676 [waiting until firm trial date to subpoena witnesses proper]; *People v. Wilson* (2005) 36 Cal.4th 309, 342 [no unreasonable delay in starting search for witness one year after reversal on appeal when no realistic expectation trial would begin any earlier]; *People v. Hovey* (1988) 44 Cal.3d 543, 564 [due diligence found where investigators began search for witness one month before trial testimony was needed].)  Brandwood, wasting no time, consulted multiple databases, contacted numerous law enforcement agencies, including the FBI, made multiple visits to an address believed to have been associated with Ramirez, created and participated in a nighttime surveillance team at that address, and spoke with various individuals believed to have knowledge about Ramirez's whereabouts.  Then, once it became apparent Ramirez was not in Hayward, the prosecution cast a wider net and discovered information placing Ramirez in Arkansas.

Defendant suggests that "with a little more work" the prosecution could have tracked down Ramirez.  However, where, as here, the record reveals

" 'sustained and substantial good faith efforts were undertaken, the defendant's ability to suggest additional steps (usually . . . with the benefit of hindsight) does not automatically render the prosecution's efforts "unreasonable." [Citations.] The law requires only reasonable efforts, not prescient perfection.' [Citations.] 'That additional efforts might have been made or other lines of inquiry pursued does not affect [a] conclusion [there was due diligence]. . . . It is enough that the People used reasonable efforts to locate the witness.' [Citation.] A court cannot 'properly impose upon the People an obligation to keep "periodic tabs" on every material witness in a criminal case, for the administrative burdens of doing so would be prohibitive.' " (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706.)

*People v. Cromer* (2001) 24 Cal.4th 889 (*Cromer*) cited by defendant, is distinguishable. In that case, the prosecution had direct knowledge the witness had moved, but took no action on this information. (*Cromer, supra*, 24 Cal.4th at p. 903.) The trial was originally slated to begin in September 1997, and it was delayed multiple times until January 1998. (*Ibid*.) Despite the prior trial dates in September, the prosecution took no action to find the witness until late December, two weeks before trial. (*Ibid*.) The trial was continued to later in January and in the meanwhile, prosecutors' efforts to find the witness can only be described as lackluster. The investigators were slow to follow up on information, left a subpoena at a home where the witness's mother resided, failed to return to the home or attempt to find contact information so they could speak with the mother. (*Id*. at pp. 903–904.)

The investigator's efforts in this case are a far cry from those made in *Cromer*. Here, the trial date was advanced unexpectedly, and the prosecution took immediate action to locate Ramirez once it learned of the new date.

Unlike the investigator in *Cromer*, Brandwood checked on multiple databases, explored leads for four different potential residences—two in Hayward, one in Riverside and one outside of California. He personally returned several times to the second residence where he believed Ramirez was living and enlisted the help of other law enforcement agencies to monitor the location. When that did not pan out, he pursued a third location, the one in Riverside that was on Ramirez's driver's license, and enlisted law enforcement officers in that city to assist him. In the meanwhile, he pursued a fourth lead that he obtained through yet another database, spoke with a former girlfriend of Ramirez's, enlisted the FBI, and provided all of this information to the prosecutor; the prosecutor then obtained a subpoena and provided it to the district attorney's office in Hot Springs, requesting that they assist him in finding Ramirez. The record here reflects the kind of " 'persevering application, untiring efforts in good earnest, [and] efforts of a substantial character' " that the court did not find present in *Cromer*. (*Cromer*, *supra*, 24 Cal.4th at p. 904.)

*People v. Windfield* (2021) 59 Cal.App.5th 496 does little to advance defendant's claim. There, the investigator started looking for the witness several months before trial, searched numerous databases, and contacted 50 to 60 of the witness's family members and friends. (*Id*. at pp. 508–512.) Though the actions of the investigator in *Windfield* were extensive, the prosecution is not required to exhaust every possible avenue of investigation to fulfill its due diligence obligation. (See, e.g., *Hardy v. Cross* (2011) 565 U.S. 65, 71–72.) Even if there were some additional steps the prosecution might have taken to find Ramirez, this hindsight assessment does not diminish the reasonableness of the actions taken by the prosecution here.

Finally, Defendant argues certain conflicts and inconsistencies between Ramirez's statements "made it all the more imperative that the jury have a chance to observe Ramirez's demeanor in person so they could evaluate the credibility of this critical witness," and the prosecution was obliged to make even greater efforts to secure his attendance at trial. There is no question that Ramirez was an important witness, but the prosecution's investigator made extensive efforts to find him. Further, Ramirez's testimony was subject to extensive cross-examination when he testified at the preliminary hearing.

Applying our independent judgment, we conclude the prosecution fulfilled its obligation of good faith and due diligence under the circumstances of this case, that Ramirez was unavailable, and therefore admission of his preliminary hearing testimony at trial did not violate defendant's right to confront witnesses or deprive him of a fair trial. (See *Herrera*, *supra*, 49 Cal.4th at p. 629.)

## II.

### *Defendant's Stipulation to His Prior Strike Conviction was Valid.*

Next, defendant contends his stipulation that he suffered a prior strike conviction is invalid because the trial court failed to provide a full advisement of his rights prior to accepting the stipulation. We disagree.

"[B]efore accepting a criminal defendant's admission of a prior conviction, the trial court must advise the defendant and obtain waivers of (1) the right to a trial to determine the fact of the prior conviction, (2) the right to remain silent, and (3) the right to confront adverse witnesses. [Citation.] Proper advisement and waivers of these rights in the record establish a defendant's voluntary and intelligent admission of the prior conviction." (*People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*).) If the record "does not reveal complete advisements and waivers, the reviewing court must examine

10

the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Id.* at p. 361.) Thus, a defendant who admits a prior conviction without expressly waiving his rights to trial, to remain silent and to confront adverse witnesses may nevertheless be found to have made a voluntary and intelligent waiver of those rights so long as "the totality of circumstances surrounding the admission supports such a conclusion." (*Id.* at p. 356.)

Here, during in limine motions, defense counsel asked the court to remove references to defendant's prior convictions when reading the charges because defendant planned to stipulate to the alleged prior convictions. In opposition, the prosecutor argued he should be able to note defendant was charged with being a felon in possession of a weapon, as that was the title of the charged offense. The prosecutor offered to accept a stipulation to the priors, but explained he would be willing and able to prove them up before the jury. The trial court agreed to remove references to defendant's prior convictions when reading the information to the jury, and it would give the parties more time to finalize the stipulation. Defense counsel agreed, and again noted the defense was "planning on stipulating to the prior conviction . . . after the trial."

The next day, before witness testimony began, defense counsel confirmed defendant was aware of the prosecution's plea offer. After discussing the offer with counsel, as well as his potential prison sentence if convicted, including the effect of his prior strike conviction, defendant confirmed that he was rejecting the offer.

After the jury announced it had reached a verdict, but before it was read in court, the parties returned to the topic of defendant's proposed

11

stipulation.  The prosecutor wanted to confirm his understanding that "the defendant has already stipulated to those priors but . . . want[ed] to make sure that he's *waiving jury* and *waiving any bench trial* and he's stipulating to those three priors, specifically the strike prior [section] 459."  (Italics added.)  Defense counsel agreed there had been a discussion about defendant stipulating to the strike prior for purposes of sentencing but could not recall if they had actually done so.  After agreeing to put the stipulation on the record, defense counsel advised defendant as follows:  "Mr. Gutierrez, you understand *you have the right to have a trial* with regards to whether your prior strike conviction can be proven beyond a reasonable doubt or not.  What we discussed going into the trial was that we would stipulate to that and so now is the time to stipulate to that. [¶] Do you agree and stipulate to that prior strike conviction and *waive your right to a trial*?"  (Italics added.)  Defendant replied, "Yes."  The court thanked the parties and defendant for confirming the stipulation.

While conceding the trial court failed to provide the three constitutional admonishments, the People argue this error does not require reversal because the record demonstrates defendant's admission was voluntary and intelligent.  (See *Mosby*, *supra*, 33 Cal.4th at p. 361.)  We agree.

We fail to see how defendant—who had just observed a jury trial in which his counsel confronted and cross-examined witnesses, and in which he knew he could have exercised his privilege against self-incrimination by declining to testify—would not understand that by waiving a trial on the prior conviction allegations, he was giving up those rights with respect to that allegation.  A defendant who sees in action the very rights in question in the context of the trial of the underlying charges cannot reasonably fail to

12

understand that the absence of a trial means those rights are forfeited. (See *Mosby, supra,* 33 Cal.4th at p. 365.)

The record also shows that just before defendant admitted the strike, the prosecutor wanted confirmation defendant was "waiving jury and waiving any bench trial" regarding his stipulation to the strike prior. Defense counsel also advised defendant he had "the right to have a trial with regards to whether [the] prior strike conviction can be proven beyond a reasonable doubt or not." When asked whether he stipulated to the prior strike conviction and waived his right to trial, defendant replied, "Yes."

Additionally, the record reflects defendant was no stranger to the legal system, as he had multiple prior convictions. This pattern of criminal activity suggests defendant had at least some " ' "knowledge and sophistication" ' " regarding his legal rights. (*Mosby, supra,* 33 Cal.4th at p. 365.)

Finally, defendant takes issue with the trial court's failure to advise him regarding the penalty that would result from his admission of the prior strike conviction. A defendant who admits a prior criminal conviction must first be advised of the increased sentence that might be imposed. (*In re Yurko* (1974) 10 Cal.3d 857, 864; *People v. Karis* (1988) 46 Cal.3d 612, 650.) However, unlike the admonition required for a waiver of constitutional rights, advisement of the penal consequences of admitting a prior conviction is not constitutionally mandated. Rather, it is a judicially declared rule of criminal procedure. (*In re Yurko,* at p. 864; *People v. Walker* (1991) 54 Cal.3d 1013, 1022, overruled on another point in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) Thus, any error in failing to advise a defendant of the penal consequences of a plea or admission is waived if not raised at or before sentencing. (*People v. Walker,* at p. 1023.) Additionally, to invalidate a plea

or admission based on the failure to advise of the penal consequences, a defendant must demonstrate it is reasonably probable he would not have entered the plea or admission had he been properly advised of its consequences. (*Id.* at pp. 1022–1023.)

Here, the record reflects defense counsel conferred with defendant regarding the potential penal consequences of declining the prosecutor's offer, including the strike prior. Also, defendant did not raise, at or before sentencing, the failure of the court to advise him of the penal consequences of his admission. By failing to do so, he has forfeited the issue on appeal. (*People v. Walker*, *supra*, 54 Cal.3d at p. 1023.) In any case, he has failed to demonstrate a reasonable probability that he would not have entered the admission had he been so advised. (*Id.* at pp. 1022–1023.)

## DISPOSITION

The judgment is affirmed.

 

 

_____
Stewart, P.J.

WE CONCUR:


_____
Miller, J.


_____
Markman, J.[*]


A164741, *People v. Gutierrez*

_____

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.