Filed 10/28/24  P. v. Slaughter CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C098781 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2201929) |
| v. | |
| JOSHUA JAMES SLAUGHTER, | |
| Defendant and Appellant. | |

A jury found defendant Joshua James Slaughter guilty of inflicting corporal injury on girlfriend C.  He contends the conviction must be reversed because the trial court prejudicially erred in admitting:  (1) the preliminary hearing testimony of girlfriend C. and (2) the prior acts testimony of girlfriend S.  Defendant also contends his counsel was ineffective by failing to object to hearsay that a police officer relayed at trial.  We reject defendant's contentions and affirm.  Undesignated statutory references are to the Evidence Code.

1

# FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2022, defendant was charged with inflicting injury upon girlfriend C. under Penal Code section 273.5, subdivision (a), a felony. At the preliminary hearing held later that month, girlfriend C. testified she had been dating defendant for almost two months and, after having a "rough morning" on September 7, 2022, defendant grabbed her arms when she tried to "exit him" and threw her "at the corner of [a] wall," causing bruising, two black eyes, and difficulty breathing through one nostril.

About six months later, the prosecution moved to admit girlfriend C.'s preliminary hearing testimony because girlfriend C. was unavailable to testify at trial. Over defendant's objection, the trial court granted the motion. At trial, the prosecution read the questions from the preliminary hearing, and Marysville Police Officer Autumn Rosenfeld read girlfriend C.'s answers. Officer Rosenfeld then separately testified that she was dispatched to the scene on the morning of September 7, 2022. Her testimony described what she saw when she arrived and relayed girlfriend C's statement of what had happened that morning.

Defendant gave a different version of events. He testified that girlfriend C. grabbed him when he tried to leave, hit him in the jaw/neck area, and then grabbed him again. After defendant pulled his arm from girlfriend C., girlfriend C. let go and went "into the drywall sideways with her face." Then girlfriend C. hit defendant's ribs with a rubber hammer and continued to harass defendant with the hammer over his head, eventually pushing him out the door. Defendant never hit girlfriend C.

The court also allowed girlfriend S. to testify about uncharged previous conduct by defendant. She dated defendant over a short period of time during which defendant verbally and physically abused her. She testified as to specific physical abuse that occurred over a few days in June 2022.

The jury found defendant guilty of inflicting injury on girlfriend C. Defendant was placed on supervised probation for three years, with conditions that included serving 30 days in county jail on weekends, attending a 52-week batterer's treatment program, and having no contact with girlfriend C. or girlfriend S.

Defendant timely appealed.

DISCUSSION

I

*Admission of Girlfriend C.'s Preliminary Hearing Testimony*

Defendant contends the trial court erred in admitting girlfriend C.'s preliminary hearing testimony for two reasons: (1) the prosecution did not demonstrate that it exercised due diligence in trying to secure girlfriend C.'s presence at trial and (2) the prosecution failed to establish the reliability of the preliminary hearing testimony. We disagree and address each contention in turn.

A.      Additional Background

In March 2023, the prosecution moved to admit girlfriend C.'s September 2022 preliminary hearing testimony. According to the motion, the prosecution served a subpoena on girlfriend C. in November 2022, requiring her to appear on March 28, 2023, to testify in defendant's case. On January 30, 2023, girlfriend C. notified the prosecution that she and her children would be moving to Florida within a few weeks so that girlfriend C. could care for her ailing grandmother. She informed the prosecution that she would not return to California to testify because the rest of her family lived in California and no one else could take care of her grandmother. The prosecution reminded girlfriend C. of the requirement to appear pursuant to the subpoena, but she stated again she would not return for trial.

The following month, an investigator for the prosecution contacted girlfriend C. to inquire about her refusal to testify. Girlfriend C. stated that she had already moved to Florida with her children, that she was taking care of her ailing grandmother, and that she

3

would not return to California to testify. Girlfriend C. was willing to testify remotely if allowed. The investigator reminded her of the subpoena, and girlfriend C. stated again that she would not travel back to California for trial.

At the hearing on the motion, the prosecution represented that it contacted girlfriend C. again and informed her that the court "could potentially issue a warrant for her should she choose to continue not wanting to come testify." It also informed her that remote testimony was not an option, but "offered to pay for her flight and for lodging to come here to testify." She again responded that "she would not be able to leave her family in Florida by themselves because there's nobody to take care of her kids or her grandmother."

In opposition to the motion, defense counsel argued that merely refusing to obey a subpoena did not make girlfriend C. unavailable.

Relying on *People v. Cogswell* (2010) 48 Cal.4th 467 (*Cogswell*), the trial court found that the prosecution had exercised due diligence and admitted the preliminary hearing testimony. Trial began as scheduled on March 28, 2023.

B.     Due Diligence

A criminal defendant has a constitutional right to confront prosecution witnesses, but the right is not absolute. (*People v. Cromer* (2001) 24 Cal.4th 889, 892.) An exception to the right exists when a witness is unavailable and has given testimony at a previous court proceeding against the same defendant and was subject to cross-examination. (*Ibid.*; § 1291, subd. (a)(2).)

A witness is unavailable when he or she is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (§ 240, subd. (a)(5).) The term "court's process" includes the processes made available by the Uniform Act to Secure the Attendance of Witnesses from without the State in Criminal Cases (Pen. Code, § 1334 et seq.; the Uniform Act). (*People v. Blackwood* (1983) 138 Cal.Ap.3d 939, 946.) The

4

Uniform Act has been adopted in all 50 states and provides a mechanism for obtaining the presence of a witness from another state at a criminal trial.  (*Cogswell*, *supra*, 48 Cal.4th at p. 471; *Barber v. Page* (1968) 390 U.S. 719, 723, fn. 4.)  "Under the Uniform Act, as adopted in California, a party in a criminal case can ask a court in the state where an out-of-state material witness is located to subpoena the witness and also to have the witness taken into custody and brought to the prosecuting state to testify," (*Cogswell,* at p. 471.)  We refer to the latter ask as "the custody option."

We defer to the trial court's determination of the historical facts of the prosecution's efforts to procure a witness and " 'independently review whether those efforts amount to reasonable diligence sufficient to sustain a finding of unavailability.' " (*People v. Thomas* (2011) 51 Cal.4th 449, 503.)  Applying this standard of review, we conclude that the trial court did not err in finding that the prosecution exercised reasonable diligence to produce girlfriend C.

Defendant contends the prosecution did not show reasonable diligence because it did not utilize the Uniform Act to secure girlfriend C.'s physical attendance at trial.  We agree with the trial court that *Cogswell* is instructive as to this contention.  In *Cogswell*, the defendant was charged with sexually assaulting the victim while the victim was on vacation in California.  (*Cogswell, supra*, 48 Cal.4th at p. 471.)  The victim returned home to Colorado, traveled back to California to testify at the preliminary hearing, but refused to return to testify at trial.  (*Id*. at p. 472.)  After the prosecution invoked the Uniform Act, a Colorado court issued a subpoena for the victim to appear in California, but the victim refused to comply, and the prosecution elected not to use the custody option.  (*Cogswell*, at pp. 472-473.)  The appellate court concluded there was insufficient diligence because the custody option was not exercised, but our Supreme Court reversed.  (*Id*. at p. 471.)

According to our Supreme Court, the prosecution "was in the best position to assess the strength of [the victim's] determination not to testify" given its direct

5

communications with her.  (*Cogswell, supra*, 48 Cal.4th at p. 479.)  And the prosecution acted reasonably when it chose not to invoke the custody option.  (*Id*. at p. 478.)  As the Court explained, such an option is a drastic measure as to any material witness and contradicts the Legislature's view codified in Code of Civil Procedure section 1219, subdivision (b) that sexual assault victims generally should not be jailed for refusing to testify against their assailants.  (*Cogswell,* at pp. 477-478.)  Expressly rejecting the argument that the prosecution should have invoked the custody option, the Court concluded that "confinement of a sexual assault victim to ensure her presence at [her] assailant's trial would . . . not be a reasonable means of securing [her] presence."  (*Id*. at p. 479.)

We reach a similar conclusion here.  The prosecution issued a subpoena to girlfriend C. well before she left the state, spoke directly with her three times regarding her refusal to return to California, communicated the potential negative consequences of disobeying the subpoena, and was told each time that she would not travel to California due to the need to provide care for family members, including children and a grandmother with no family nearby.  Based on those communications, it was reasonable for the prosecution to conclude that girlfriend C. was not going to obey a Florida court order requiring her to travel under the Uniform Act.  This left the prosecution with the custody option, but that option was no less drastic than it was in *Cogswell*.  The Legislature recognized as much when it amended Code of Civil Procedure section 1219, subdivision (b) to exempt domestic violence victims from jailing for contempt.  (Stats. 2008, ch. 49.)  The author of that measure noted that incarceration of domestic violence victims for refusal to testify "compromises the . . . victim's safety and well-being" and exposes the victim to additional legal consequences if the victim has children.  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1356 (2007-2008 Reg. Sess.) as introduced, p. 5.)  As in *Cogswell*, invoking the custody option was not a reasonable means of securing the witness's presence (*Cogswell, supra*, 48 Cal.4th at p. 479).  For

6

these reasons, we conclude that the prosecution reasonably determined that using the Uniform Act was unnecessary.

*Blackwood*, on which defendant relies, is distinguishable. There, the defendant was charged with attempting to escape from prison, and a temporary employee of the prison testified at the preliminary hearing regarding the defendant's escape efforts. (*People v. Blackwood, supra*, 138 Cal.App.3d at p. 942, fn. 3.) But by the time of trial, the witness no longer worked for the prison, had not received a subpoena to testify while he was in California, and was on a driving tour to Alaska and Canada with his wife. (*Id.* at p. 945.) The prosecution located the witness in Alaska and offered to pay his travel expenses to return. (*Id.* at p. 946) The witness refused to leave his wife and luggage because they were about to board a ship for Seattle. (*Ibid.*) A few days later, the prosecution again contacted the witness, but he refused to return for trial. (*Ibid.*) The prosecution did not use the Uniform Act, guessing that the states involved were unlikely to issue a subpoena due to the witness's undue hardship. (*Blackwood*, at p. 947.) The reviewing court rejected the prosecution's reliance on such guesswork and held that the prosecution failed to use due diligence because it did not invoke the Uniform Act. (*Blackwood,* at p. 947.)

Unlike the witness in *Blackwood*, girlfriend C.'s refusal to testify was not based on a desire to continue a vacation. She could not travel due to the need to care for her grandmother and children, and she maintained that resolve despite the prosecution's multiple reminders of her obligation to appear pursuant to a previously issued valid subpoena. The prosecution's efforts were more diligent here, making it clearer than in *Blackwood* that invoking the Uniform Act would be unsuccessful. Also, girlfriend C. was the purported victim of domestic violence and exercising the custody option of the Uniform Act was not a reasonable means to secure her presence. (*Cogswell, supra,* 48 Cal.4th at p. 479; see *People v. Lawson* (2020) 52 Cal.App.5th 1121, 1128 ["the

7

determination of reasonableness must take into account the import of Code of Civil Procedure section 1219, subdivision (b)"].)

The cases on which defendant relies in his reply brief with facts closest to those at issue here are distinguishable for similar reasons. In *In re Terry* (1971) 4 Cal.3d 911, the witnesses were not served with subpoenas for a new trial date and the prosecution made no attempt to persuade them to come to California to testify. (*Id*. at pp. 930-931.) In *People v. Foy* (2016) 245 Cal.App.4th 328, the witness was the victim of a robbery, not sexual assault or domestic violence, the subpoena served on the witness had no legal effect, and the witness asserted inability to travel due to vague obligations. (*Id*. at pp. 349-350.) In *People v. Masters* (1982) 134 Cal.App.3d 509, the prosecution never served a valid subpoena on an evasive witness, a robbery victim, instead relying on her promise to appear at trial despite her evasive behavior. (*Id*. at pp. 520, 526.) And in *People v. St. Germain* (1982) 138 Cal.App.3d 507, the witness, a theft victim, moved to Holland by the time of trial but was never served with a valid state or federal subpoena. (*Id*. at pp. 516-517, 518, 526; see *People v. Watson* (1989) 213 Cal.App.3d 446, 453 [federal subpoena is not sine qua non for all cases, particularly those where the witness has been served with a valid state subpoena].) These cases bear insufficient resemblance to the facts presented here.

Defendant's suggestion that the trial court could have referred girlfriend C. to domestic violence counseling to convince her to testify before holding her in contempt under Code of Civil Procedure section 1219, subdivision (b) misses the mark. The issue here was not girlfriend C.'s willingness to testify, but rather her inability to travel and provide in-person testimony. Defendant's suggestion assumes that girlfriend C. would have obeyed a Florida order to travel, a possibility the prosecution had good reason to reject, or that the prosecution would have secured her presence through the custody option, a step we consider unnecessary in these circumstances.

8

Defendant also maintains that the prosecution's efforts outside the Uniform Act were insufficient. Specifically, in defendant's view, (1) "subpoenaing a witness and speaking to the witness via two phone calls to secure her presence can hardly be deemed" reasonable diligence, and (2) the prosecution should have conducted a video-recorded conditional exam when it knew of girlfriend C.'s intent to leave the state. We disagree.

There is no mechanical definition of the diligence required to secure the presence of a witness. (*People v. Sanders* (1995) 11 Cal.4th 475, 523.) The prosecution must show that its efforts were reasonable under the circumstances presented. (*People v. Herrera* (2010) 49 Cal.4th 613, 623.) In line with these principles, and contrary to defendant's suggestion, there is no fixed number for how many times the prosecution needs to contact a witness to persuade her to testify. And in this case, the prosecution's efforts were not limited to two phone calls as defendant suggests. On three separate occasions, the prosecution advised girlfriend C. regarding the subpoena and her obligation to appear to testify. The third time, the prosecution offered to pay for her travel. On all three occasions, girlfriend C. was steadfast in her inability to leave the state due to the need to care for dependent family members.

Nor are we persuaded by defendant's contention that the prosecution should have conducted a videotaped conditional examination of girlfriend C. In support of this contention, defendant relies on *People v. Roldan* (2012) 205 Cal.App.4th 969, but that reliance is misplaced. In *Roldan*, the prosecution knew that a material witness would be deported at the conclusion of the preliminary hearing. (*Id*. at p. 981.) The reviewing court identified various steps the prosecution could have taken to preserve the defendant's constitutional right to confront a witness, including videotaping the preliminary hearing testimony and utilizing various immigration-specific remedies. (*Id*. at pp. 980-984.) The prosecution also could have subpoenaed the witness regarding the trial before he was deported, impressed upon him that he was a material witness, gave him contact information so he could stay in touch with authorities, and not waited until the first day of

9

trial to notify defense counsel of his deportation. (*Id.* at p. 984.) But the court emphasized that videotaping the testimony "was not a necessary condition to a finding of unavailability." (*Id.* at p. 981.) In fact, none of the identified steps were necessarily mandatory to show due diligence. (*Id*. at pp. 980-985.) But looking at the record as a whole, the absence of any of those steps compelled the court to find a lack of due diligence. (*Id*. at pp. 984-985.)

Here, unlike the witness in *Roldan*, nothing in the record indicates that girlfriend C. intended to relocate at the time of the preliminary hearing, or that the prosecution knew of such intent. Girlfriend C. did not communicate her intent to the prosecution until four months after her preliminary hearing testimony. Based on this distinction alone, *Roldan* is inapposite. Moreover, *Roldan* emphasized that videorecording a witness's testimony is not a prerequisite to a finding of unavailability or due diligence. Instead, "the totality of efforts of the proponent to achieve presence of the witness must be considered by the court." (*People v. Byron* (2009) 170 Cal.App.4th 657, 670.) " 'What constitutes due diligence . . . depends upon the facts of the individual case.' " (*People v. Sanders, supra*, 11 Cal.4th at p. 523.) "The prosecution must do what is reasonable under the circumstances, not necessarily everything that can be suggested in hindsight." (*People v. Sanchez* (2016) 63 Cal.4th 411, 422.) We conclude that the prosecution reasonably determined it might be able to convince girlfriend C. to return to testify and made reasonable efforts to that end. The fact that the prosecution did not seek a video recorded conditional exam does not alter our conclusion.

C.    Reliability

Defendant contends the prosecution failed to establish the reliability of the preliminary hearing testimony. We disagree.

"California permits the use of the prior testimony of a witness against a criminal defendant only when [both] the unavailability of the witness and the reliability of the testimony are established." (*People v. Carter* (2005) 36 Cal.4th 1114, 1172.) The

10

testimony is deemed reliable if "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (§ 1291, subd. (a)(2).)

We find no merit in defendant's contention that the lower standard of proof of the preliminary hearing altered defendant's cross-examination motives such that girlfriend C.'s testimony was unreliable. Courts have repeatedly rejected similar contentions. (See, e.g., *People v. Smith* (2003) 30 Cal.4th 581, 611 ["we have routinely allowed admission of the preliminary hearing testimony of an unavailable witness"]; *People v. Ogden* (1985) 168 Cal.App.3d 611, 617.) To admit former testimony, the motives "need not be identical, only 'similar.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 975.) Admission of such testimony is permitted and "does not offend the confrontation clauses of the federal or state Constitutions – not because the opportunity to cross-examine the witness at the preliminary hearing is considered an exact substitute for the right of cross-examination at trial [citation], but because the interests of justice are deemed served by a balancing of the defendant's right to effective cross-examination against the public's interest in effective prosecution." (*Ibid*.)

Defendant's reliance on *Barber v. Page, supra*, 390 U.S. 719 and *People v. Louis* (1986) 42 Cal.3d 969 for the contrary view is misplaced. Although the United States Supreme Court noted in *Barber* that a "preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial," it also acknowledged that the opportunity for cross-examination of a witness at a preliminary hearing may still satisfy the confrontation clause. (*Barber*, at p. 725.) Just two years later, the same court confirmed the same when the defendant's attorney was not "significantly limited in any way in the scope or nature of his cross-examination of the witness . . . at the preliminary hearing." (*California v. Green* (1970) 399 U.S. 149, 166.) And in *Louis*, the reviewing court observed in dicta that defense counsel's cross-examination in the earlier proceeding

11

was focused on tying the witness down to one of three stories the witness had told earlier and the judge frustrated defense counsel's attempt at cross-examination by imposing restrictions and arguing with counsel. (*Louis,* at p. 990.) No similar circumstances were present here. *Louis* is inapposite.

Defendant's contention that he would have asked different questions of girlfriend C. during trial than he did at the preliminary hearing is also unpersuasive. "This argument can always be made, as one can always think of additional questions. However, it is the opportunity and motive to cross-examine that matters, not the actual cross-examination. 'As long as defendant was given the opportunity for effective cross-examination, the statutory requirements were satisfied; the admissibility of [the preliminary hearing testimony does] not depend on whether defendant availed himself fully of that opportunity.'" (*People v. Smith, supra*, 30 Cal.4th 581 at pp. 611-612.) This principle compels us to also reject defendant's concern that his counsel's cross-examination of girlfriend C. at the preliminary hearing spanned only three pages. Unlike the defendant in *People v. Gibbs* (1967) 255 Cal.App.2d 739, defendant here was not given a bare opportunity to cross-examine the witness and the witness was not an informant with suspect motives for testifying. (*Id.* at pp. 745-746 [defense counsel was appointed only five minutes before the hearing].) Under these circumstances, the fact that defendant chose not to avail himself of the opportunity to more fully cross-examine girlfriend C. is irrelevant.

For these reasons, we conclude the trial court did not err in finding that defendant's motive and interest in cross-examining girlfriend C. at the preliminary hearing and at the trial were sufficiently similar to satisfy the requirements of section 1291 and the confrontation clause.

## II

### *Admission of Girlfriend C.'s Statement to Officer*

Defendant contends his counsel was constitutionally ineffective because he did not object to inadmissible hearsay statements made by girlfriend C. to Officer Rosenfeld. We disagree.

### A. Additional Background

At trial, Officer Rosenfeld testified that she was dispatched to an apartment for a possible domestic violence incident on September 7, 2022, around 10:40 a.m. When she went inside the apartment, girlfriend C. was "holding ice to her face" and was "noticeably shaken up." After apologizing to Officer Rosenfeld for being shaken up and "trying to calm down for her daughter," girlfriend C. "was able to give . . . a fairly calm and collected statement." According to Officer Rosenfeld, girlfriend C. stated that she and defendant had gotten into an argument that turned physical. Specifically, girlfriend C. stated that "she was pushed by [defendant], and he had pushed her with such force that she turned and hit her face on the wall in the hallway and she had fallen to the ground." Girlfriend C. then told the officer that defendant was yelling at her and grabbed both of her biceps, after which she pushed defendant off, or tried to push him off, and then threatened to call the police.

### B. Analysis

To establish ineffective assistance of counsel, defendant must establish that counsel's performance fell below an objective standard of reasonableness. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) "[W]e begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) For instance, our Supreme Court has repeatedly held that "deciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (See, e.g., *People v. Hillhouse* (2002) 27 Cal.4th 469, 502; *People v.*

13

*Arredondo* (2019) 8 Cal.5th 694, 711.) Also, the "[f]ailure to raise a meritless objection is not ineffective assistance of counsel." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

Here, various tactical decisions may have played a part in counsel's conduct. He may have chosen to forgo an objection to Officer Rosenfeld's testimony to avoid highlighting it and making it appear more significant. (*People v. Williams* (1997) 16 Cal.4th 153, 215; see *People v. Ramirez* (2019) 40 Cal.App.5th 305, 311 [no deficient performance for failure to object during closing argument because "the jury may have looked bored, and the stimulus of an objection may have awakened the jurors' interest in a counterproductive way"].) Similarly, he may have chosen to avoid causing the prosecutor to establish a more compelling foundation for the admission of the contested testimony. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 506.)

Taking that tactical decision one step further, counsel may have also concluded that an objection to girlfriend C.'s statements would have been meritless. To this point, we reject defendant's contention that girlfriend C.'s statements clearly fell outside the hearsay exception for spontaneous statements described in section 1240. Under section 1240, hearsay testimony is admissible if it "(a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (§ 1240, subds. (a), (b).) Contrary to defendant's view, the fact that girlfriend C. was able to deliver a fairly calm and collected statement is not inconsistent with spontaneity. (*People v. Poggi* (1988) 45 Cal.3d 306, 319.) And the record does not show, as defendant suggests, that girlfriend C. was responding to questions posed by Officer Rosenfeld. Even if she was so responding, "there [is] no reason to suppose [the officer's] questions were anything other than the usual questions asked when an officer initially contacts a victim: What happened? When and where did this happen? What happened next." (*People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1590.) Girlfriend

14

C.'s "answers to these kinds of routine, nonsuggestive inquiries would not bar application of the spontaneous utterance hearsay exception." (*Ibid.*) The crucial issue under section 1240 is the declarant's mental state. (*Saracoglu,* at p. 1590.) Here, the evidence shows that girlfriend C. spoke to Officer Rosenfeld the same morning as the incident and was "noticeably shaken up" and icing her face just before she spoke to her. We cannot agree with defendant that the trial court would necessarily have sustained an objection to girlfriend C.'s statements.

Given this record, and the strong presumption that counsel's conduct falls within the wide range of professional assistance, we reject defendant's claim of ineffective assistance of counsel.

### III

### *Admission of Girlfriend S.'s Testimony*

A.    Additional Background

The prosecution's motion to admit defendant's acts of domestic violence against girlfriend S. described three incidents over the course of three days in June of 2022 in which defendant strangled girlfriend S., hit girlfriend S. in the arm with a lawn ornament, and slapped girlfriend S. across the face. No charges were filed.

Defendant opposed the motion on the ground that the evidence was more prejudicial than probative but did not elaborate further. He also argued it would confuse the jury to hear directly from an alleged victim in a different case but not from the victim in this case. The court disagreed with defendant based on the following factors: (1) the conduct was "extremely close to the period of time in question"; (2) "the degree of the offense [was] about the same"; (3) presentation of the evidence would not result in an undue consumption of time; and (4) girlfriend S. and girlfriend C. did not know each other. The court admitted the evidence to show propensity under section 1109 and to show intent and absence of mistake under section 1101, subdivision (b).

15

At trial, girlfriend S. testified as to the strangling and lawn ornament incidents. The lawn ornament incident occurred when girlfriend S. "was taking off to the front gate to leave because [she] didn't have [her] keys." Defendant ran out, grabbed a plastic decorative candy cane in the yard, hit her in the back with it, and then "kind of dragged" her over to the front of the house. The next day, girlfriend S. again tried to leave. She and defendant got into an argument after defendant "wouldn't really let [her] take any of [her] stuff out the room" and defendant threw her down on the bed, held her down by her neck, and wouldn't let her up.

Girlfriend S. also testified that while she dated defendant, "there was a lot of fighting and arguing," "a lot of controllingness," and "[a] lot of jealousy." Specifically, defendant "would always tell [her] nobody cares about [her], [she has] no family, and [she's] like a piece of crap and just a lot of degrading things." On cross-examination, girlfriend S. testified that defendant's mother and the mother's boyfriend were at defendant's home when the strangulation incident occurred, but "they didn't see any of this" and defendant had strangled his mother before.

The jury was instructed that it could consider girlfriend S.'s testimony only if the prosecution had proven by a preponderance of the evidence that defendant in fact committed the uncharged acts described in the testimony. If so proven, the jury could but was not required to conclude that defendant was disposed to commit domestic violence and was likely to commit the offense against girlfriend C. The testimony was insufficient by itself to prove that defendant was guilty of domestic violence against girlfriend C. and could not be used for any other purpose.

B.     Analysis

Under section 1101, subdivision (a), evidence of prior criminal acts is generally inadmissible to prove a defendant's criminal disposition to commit such acts. (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.) But when a defendant is accused of an offense involving domestic violence, section 1109 allows for the admission of the defendant's

other acts of domestic violence provided the evidence is not inadmissible under section 352. Defendant contends the court abused its discretion in finding girlfriend S.'s testimony admissible under section 352. We disagree.

Sections 1109 and 352 require a court to balance the probative value of the evidence against various factors, including: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses. (*People v. Robinson* (2024) 99 Cal.App.5th 1345, 1352 (*Robinson*).) The prejudice that section 352 is designed to avoid is not the damage that naturally results from highly probative evidence, but rather the prospect of leading the jury to prejudge a person or focus on extraneous factors. (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192.) A trial court's exercise of discretion in conducting the section 352 balance " 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Mani* (2022) 74 Cal.App.5th 343, 371 (*Mani*).)

Here, the trial court did not abuse its discretion. The prior conduct girlfriend S. described was similar to the conduct charged and therefore probative. (*People v. Thomas* (2021) 63 Cal.App.5th 612, 630.) The evidence demonstrated a pattern of defendant inflicting physical abuse on a romantic partner when that partner tries to get away from him. "This pattern was highly probative of his propensity to engage in similar conduct" with girlfriend C. (*People v. Merchant*, *supra*, 40 Cal.App.5th at p. 1193.)

The court reasonably concluded that the probative value of the evidence outweighed the prejudicial factors described above. The prior conduct involved a different victim, reducing the potential confusion of issues and the danger of fabrication, and was extremely close in time. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 533.) The presentation of the prior conduct evidence consumed only 14 pages out of the over

100-page trial transcript  (See *People v. Frazier* (2001) 89 Cal.App.4th 30, 42 [no prejudice where evidence of uncharged crimes consumed 27 percent of total trial transcript]; *People v. Escudero* (2010) 183 Cal.App.4th 302, 312 [the fact that prior sexual offenses constituted more than half of the witness testimony did not compel trial court to exclude it as an undue consumption of time].)  Defendant offers no authority requiring us to compare the length of girlfriend S.'s testimony to that of girlfriend C. or to consider the time the prosecution spent discussing girlfriend S.'s testimony in closing arguments.  (See *Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 629-630 [failure to support assertion with citation to authority forfeits claim] (*Citizens*).)  And we reject defendant's concern with the lack of corroboration of girlfriend S.'s testimony.  "Corroboration is not a requirement" under section 1109.  (*Mani, supra*, 74 Cal.App.5th at p. 372.)

We also disagree with defendant that the prior act evidence was more inflammatory than the act charged.  Defendant's suggestion that we should consider the more emotional nature of girlfriend S.'s testimony in comparison to the reading of girlfriend C.'s testimony lacks sufficient development and citation to authority.  (*Citizens, supra*, 43 Cal.App.5th at pp. 629-630.)  In determining the tendency to inflame we consider the "nature of the uncharged conduct" (*Robinson, supra*, 99 Cal.App.5th at p. 1352).  While girlfriend S. testified that defendant said demeaning things to her, slapped her, strangled her and his mother, hit her with a lawn ornament, and dragged her, girlfriend C. testified that defendant called her names, grabbed her and "threw her into a wall," causing her bruises and a "crushed" face with continuing health problems.  Neither set of circumstances appears more inflammatory than the other.  Even if the inflammatory comparison were debatable, a merely debatable ruling cannot be deemed an abuse of discretion.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.)

And while the evidence was damaging, it was not unduly prejudicial.  (*People v. Williams* (2013) 58 Cal.4th 197, 270.)  Unduly prejudicial evidence subject to exclusion

under section 352 is evidence that "uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues." (*Williams*, at p. 270.) There was nothing about girlfriend S.'s testimony that met this standard.

Defendant's contention that the jury might have been tempted to punish him for the uncharged conduct girlfriend S. described does not persuade us otherwise. While this is a legitimate factor for the court to consider when conducting the section 352 analysis (*People v. Soper* (2009) 45 Cal.4th 759, 772-773), we conclude the potential for this to occur here did not outweigh the probative value of the evidence. (*Mani, supra*, 74 Cal.App.5th at p. 373.) The jury was specifically instructed on the purposes for which it could use the uncharged conduct evidence and those instructions guarded against the possibility that the jury would use the evidence for an improper purpose. (*People v. Wilson* (2008) 44 Cal.4th 758, 803 [jury presumed to follow jury instructions].)

Defendant also contends the trial court prejudicially erred by allowing girlfriend S. to testify as to actions that did not constitute domestic violence. In particular, defendant takes issue with girlfriend S.'s testimony that defendant was controlling, jealous, and verbally abused her. Even assuming this testimony did not amount to domestic violence under section 1109 (but see *Mani, supra*, 74 Cal.App.5th at pp. 360-361, 364), defendant made no objection on this ground at trial. His objection under section 352 to the prosecution's motion to admit the testimony did not preserve a challenge as to whether the testimony proffered at trial constituted domestic violence or went beyond the scope of the motion, nor did it render such a challenge futile. (*Robinson, supra,* 99 Cal.App.5th at p. 1356; *People v. Thomas* (2023) 14 Cal.5th 327, 367.) Had defendant objected on this basis at trial, the prosecution could have cured any alleged issue or offered argument to allow the court to conduct the proper analysis. (*Robinson,* at pp. 1356-1358; § 353, subd. (a).)

19

DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
KRAUSE, J.